[No. B048316. Second Dist., Div. Four. Sept 12, 1990.]

REPUBLIC INDEMNITY COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ALPHA THERAPEUTIC CORPORATION, Real Party in Interest.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

494

## COUNSEL

Robert N. Benjamin, Waldman, Bass, Stodel & Graham, Irwin Waldman, Horvitz & Levy, David M. Axelrad, Daniel J. Gonzalez and Alison K. Greene for Petitioner.

No appearance for Respondent.

Knapp, Petersen & Clarke and Steven G. Winder for Real Party in Interest.

## OPINION

**EPSTEIN, J.**—Petitioner Republic Indemnity Company (Republic) seeks a writ of mandate to overturn respondent court's order denying its motion for summary judgment and granting the motion for summary adjudication of issues of real party in interest Alpha Therapeutic Corporation (Alpha). We issued an alternative writ of mandate to review respondent court's order

that the following two issues were without substantial controversy: (1) Republic "had and continues to have a duty to defend Alpha in the Fisher lawsuit" and (2) "[t]he Fisher lawsuit contains allegations of disparate impact employment discrimination." (Issue seven.)

The central question in this proceeding is whether as a matter of law Republic was obligated to defend Alpha in a wrongful termination action under an "employers' liability endorsement" of a workers' compensation policy. We conclude that at the time Alpha tendered its defense to Republic it was evident that the employee-plaintiff was proceeding under a "failure to reasonably accommodate" theory which was potentially covered under the Republic policy. Accordingly, Republic was obligated to assume the defense of that action. In the unpublished portion of this opinion we conclude that issue seven was incorrectly adjudicated.

## BACKGROUND

Alpha initiated the action below due to Republic's alleged wrongful refusal to indemnify and defend it in an action commenced by Louis Fisher, a former Alpha employee. In the Fisher complaint against Alpha, filed on February 9, 1982, Mr. Fisher alleged that he was formerly employed by Alpha as the director of its San Francisco Donor Center. Upon being diagnosed as having cancer Mr. Fisher was placed on leave of absence. When he was sufficiently rehabilitated to return to work Alpha informed Mr. Fisher that since his position had been filled, he should remain on leave of absence while Alpha sought to find him a suitable position. The complaint also alleged that on February 23, 1981, Alpha informed Mr. Fisher that he was terminated effective July 22, 1980.

In his first cause of action for wrongful termination, Mr. Fisher alleged that Alpha's conduct violated Alpha's own "written personnel policies" and also violated "Government Code § 129.20 [sic]." In his second cause of action Mr. Fisher alleged that Alpha's conduct constituted intentional infliction of emotional distress. Finally, Mr. Fisher alleged that Alpha breached its duty of good faith in that "[he] was promised that he could take a leave of absence from his position with Alpha in order to secure treatment for his medical condition, which promise was relied upon by [him] and which promise was breached when [he] was fired for taking the leave of absence." In addition to seeking compensatory damages, Mr. Fisher alleged that Alpha's conduct was "intentional, malicious and oppressive" and supported an award of punitive damages.

On February 20, 1986, in the first of two opinions in this case the Court of Appeal (First Appellate District) filed a published opinion holding that

Mr. Fisher was entitled to discover information relating to a claim that Alpha violated the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) by failing to reasonably accommodate him due to his condition. (*Fisher* v. *Superior Court* (1986) 177 Cal.App.3d 779 [223 Cal.Rptr. 203] (*Fisher I*).)

By letter of April 15, 1986, Alpha apprised Republic of the Fisher lawsuit and asked whether Alpha was covered under the employers' liability coverage.

On June 22, 1988, the Court of Appeal, in an unpublished opinion, reversed an order granting summary judgment in favor of Alpha as to Mr. Fisher's wrongful termination claim (*Fisher II*). The court concluded that Alpha failed to establish that as a matter of law it had reasonably accommodated Mr. Fisher. The court affirmed the summary judgment as to the second and third causes of action on the ground that they were only reiterations of the first cause of action.

By letter of March 14, 1989, Republic denied coverage. Alpha later settled the Fisher lawsuit for $550,000. Due to Republic's denial of coverage, Alpha commenced the action below.

Alpha moved for summary adjudication of issues. Republic opposed and moved for summary judgment. The trial court granted Alpha's motion in part and denied it in part, and denied Republic's motion in full. Republic then instituted this writ proceeding.

## Discussion

### I

### Republic Had a Duty to Defend Alpha in the Fisher Action

A. *We Independently Analyze the Trial Court's Ruling.*

We directed the issuance of an alternative writ to review two issues that the trial court had summarily adjudicated in Alpha's favor. The first of these was that Republic "had and continues to have a duty to defend Alpha in the Fisher lawsuit." In reviewing the propriety of this ruling we are guided by well established principles. ■ " 'The purpose of a partial summary judgment is to dispose of one or more issues before trial so that the parties may focus on the questions remaining.' [Citations.] Summary judgment is proper if no material factual issue exists. [Citation.] Our review

is limited to the facts shown in the documents presented to the trial court in making our independent determination of their construction and effect as a matter of law. [Citation.]" (*Downey Savings & Loan Assn.* v. *Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1086-1087 [234 Cal.Rptr. 835].) We now independently analyze whether as a matter of law Republic was obligated to defend Alpha in the Fisher lawsuit.

B. *The Statutory Exclusion Precluding Indemnification For Wilful Acts Did Not Absolve Republic of Its Defense Obligations.*

 Republic argues that it had no duty to defend because "[t]he employment discrimination Fisher has alleged is uninsurable because such discrimination is a wilful and intentional act, done with a preconceived design to inflict injury." To support this position Republic relies upon Insurance Code section 533 (section 533) which states that "[a]n insurer is not liable for a loss caused by the wilful act of the insured . . . ." Section 533 is "implied as an exclusionary clause into every insurance contract." (*Allstate Ins. Co.* v. *Overton* (1984) 160 Cal.App.3d 843, 849 [206 Cal.Rptr. 823].) However, section 533 precludes only *indemnification* of wilful conduct and not the *defense* of an action in which such conduct is alleged. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 277 [54 Cal.Rptr. 104, 419 P.2d 168] [Section 533 "forbid[s] only contracts which indemnify for 'loss' . . . resulting from wilful wrongdoing. Here we deal with a contract which provides for *legal defense* against an action charging such conduct . . . ." (Italics in original.)]; *Ohio Casualty Ins. Co.* v. *Hubbard* (1984) 162 Cal.App.3d 939, 944 [208 Cal.Rptr. 806] [" '[a]n insurer is not absolved from its duty to *defend* the lawsuit merely because it is forbidden by law or contract to indemnify the liability-causing action.' [Citation.]" (Italics in original.)].)[1]

In *Ohio Casualty*, we explained that even though public policy or section 533 precludes an insurer from indemnifying an insured in an underlying action the duty to defend still exists so long as "the insured reasonably expect[s] the policy to cover the types of acts involved in the underlying suit[.]" (162 Cal.App.3d at p. 947.) We concluded that the cases containing the "blanket statement" that "the absence of the insurer's potential liability from a suit eliminates any duty to defend" involve the interpretation of either the insuring clause or an express exclusionary clause. (Cf. *Fire Ins.*

---

[1] The same is true with respect to an exclusion based upon public policy such as the one underlying Republic's assertion that "[e]mployment discrimination is an evil to be avoided. It is not a risk to be spread through insurance coverage." (See *Ohio Casualty Ins. Co.* v. *Hubbard, supra,* 162 Cal.App.3d at pp. 946-947 [the public policy rationale against indemnification for punitive damages does not preclude an insurer's defense of a lawsuit in which the only remaining claim is for punitive damages].)

*Exchange* v. *Abbott* (1988) 204 Cal.App.3d 1012, 1029 [251 Cal.Rptr. 620] [without reference to *Ohio Casualty* the court applied the basic principle that " 'where there is no possibility of coverage there is no duty to defend' " to a case in which coverage was excluded under section 533].) We continue to adhere to the views expressed in *Ohio Casualty* that an insurer is excused from defending an action premised upon wilful conduct only if there is an express exclusion to that effect or if the insured does not reasonably expect such a defense. ■■■ We now explain that (1) nothing in the insuring clause of the Republic policy, or in any of its exclusionary clauses precludes defense of the Fisher action, and (2) we need not determine whether Alpha reasonably expected Republic to defend an action premised entirely upon wilful conduct because the Fisher lawsuit was not such an action.

> 1. *The Republic Policy Did Not Preclude Defense of the Fisher Action.*

The Republic policy in question is a "Workers Compensation and Employers' Liability Policy." Its "Employers' Liability" clause provides in pertinent part that Republic agrees "[t]o pay all sums which the Employer, as an employer, shall become obligated to pay for damages . . . because of bodily injury, sickness or disease . . . sustained [by employees] . . . whether such obligations arise out of a claim or suit by such employees or others . . . ."[2] The defense clause of the Republic policy provides in pertinent part that Republic agrees to "defend in the name and on behalf of the Employer, claims or suits against the Employer for . . . damages because of injuries insured against hereunder, and to pay all costs of such defense . . . . Defense and costs will not be provided for claims or suits for punitive or exemplary damages, or under any federal legislation, statutes, or administrative enactments, or for any of the classifications set forth in the exclusion section of this policy."

*Gray* v. *Zurich Insurance Co.*, *supra*, 65 Cal.2d at page 272, is the leading case discussing an insurer's obligation to assume the defense of its insured. In *Gray* the insurer issued a "Comprehensive Personal Liability" policy in which it agreed to defend "any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this endorsement. . . ." (*Id.* at p. 272.) The *Gray* court explained that in the absence of a policy exclusion "these promises, without

---

[2] *In Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916 [226 Cal.Rptr. 558, 718 P.2d 920], the court explained that "employers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is intended to serve as a 'gap-filler' providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute . . . ."

further clarification, would lead the insured reasonably to expect the insurer to defend him against suits seeking damages for bodily injury, . . . whether intentional or inadvertent." (*Ibid.*) Similarly, Republic's agreement in this case to defend suits "for damages insured against hereunder" obligated it to defend employee actions because of "bodily injury, sickness or death" regardless of whether those injuries were intentionally caused, unless defense of such suits was clearly excluded. There are three express exclusions in the policy that warrant discussion. None of them amounts to a clear exclusion that would relieve Republic of its duty to defend.

First, there is an exclusion in the defense clause for "claims or suits for punitive or exemplary damages." There was a prayer for punitive damages in the Fisher action. Coupled with that request, however, was a prayer for compensatory damages. Republic does not assert that these compensation damages are of a type excluded from the policy. Because the covered damages were sought in the underlying suit, the existence of a prayer for punitive damages does not absolve Republic from its obligation to defend. ■ (See *California Union Ins. Co.* v. *Club Aquarius, Inc.* (1980) 113 Cal.App.3d 243, 248 [169 Cal.Rptr. 685] ["An insurer, bound to defend an action against its insured, must defend against all of the claims involved in that action, even though some . . . of them ultimately result in recovery for damages not covered by the policy."].)

Second, the defense clause excludes "suits . . . under any federal legislation, statutes, or administrative enactments" No such federal claims were made in the Fisher suit.

Finally, excluded from Republic's defense obligations are "suits . . . for any of the classifications set forth in the exclusion section of this policy." Republic does not call our attention to any policy exclusion which it claims triggers this clause. The only noteworthy exclusion we have found in reviewing the policy is that it " . . . does not apply to or insure the increase in any award by reason of serious and wilful misconduct or illegal employment of a minor (under sections 4553 and 4557 of the California Labor Code, Insurance against which is prohibited by sections 11661 and 11661.5 of the California Insurance Code)." Republic's failure to argue that this exclusion applies to the Fisher action is understandable. The Labor Code sections referred to in that exclusion relate solely to risks insurable under a workers' compensation policy. They have nothing at all to do with insurance for claims not covered by workers' compensation, such as the FEHA claim involved in this case. (See *Meninga* v. *Raley's, Inc.* (1989) 216 Cal.App.3d 79, 84 [264 Cal.Rptr. 319] [claim for employment discrimination under FEHA is not barred by the exclusive remedy provision of Workers' Compensation Law].)

In sum, nothing in the Republic policy absolves it from defending employee actions based upon wilful misconduct. As we now explain, neither section 533 nor public policy absolves Republic of its duty to defend.

### 2. *No Implied Exclusion Absolved Republic of Its Duty to Defend.*

As we have seen, the statutory exclusion proscribing indemnification of wilful conduct absolves an insurer of its defense only if the insured does not reasonably expect such a defense. Here, we need not reach the question of reasonable expectations. At the time Republic refused to defend the Fisher action, it was clear that Mr. Fisher could potentially recover from Alpha without proving that it engaged in "wilful" conduct. Thus, as a matter of law section 533 did not absolve Republic from its defense obligations.

" 'The duty to defend . . . does not turn upon the ultimate adjudication of coverage . . . .' " (*Silva & Hill Constr. Co.* v. *Employees Mut. Liab. Ins. Co.* (1971) 19 Cal.App.3d 914, 926 [97 Cal.Rptr. 498].) Instead, in determining whether an insurer breached its duty to defend "[t]he crucial question is whether [the insurer] was in possession of factual information which gave rise to potential liability under its policy when the company denied . . . a defense. . . ." (*Mullen* v. *Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163, 170 [140 Cal.Rptr. 605].) "[I]n analyzing the insurer's duty to defend [we do not] look merely to the language of the complaint filed against the insured. 'Defendant cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. . . . Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. *An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential liability* under the policy.' (Italics added.) [Citation.]" (*Paramount Properties Co.* v. *Transamerica Title Ins. Co.* (1970) 1 Cal.3d 562, 570-571 [83 Cal.Rptr. 394, 463 P.2d 746].) " '[W]here there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer.' [Citation.]" *State Farm Mut. Auto. Ins. Co.* v. *Longden* (1987) 197 Cal.App.3d 226, 233 [242 Cal.Rptr. 726].)

Here, Republic argues that because the Fisher action was premised upon a "wilful act" as that term is used in section 533, there was no duty to defend. In *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 887 [151 Cal.Rptr. 285, 587 P.2d 1098], the court cited to a "clear line of authority in this state to the effect that even an act which is 'intentional' or 'wilful' within the meaning of traditional tort principles will not exonerate

the insurer from liability under Insurance Code section 533 unless it is done with a *'preconceived design to inflict injury.'* " (Italics added.)

The issue is authoritatively decided in *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 159 [181 Cal.Rptr. 784, 642 P.2d 1305] in which the court discusses, in the context of section 533, "an act performed without *intent to harm* . . . [but which] nevertheless result[s] in injury and possible exposure to punitive damages because it was done with conscious disregard for the rights or safety of others. [The court concluded that while public policy considerations preclude indemnification of punitive damages in this situation], the conduct is not wilful as contemplated by section 533. Thus, the policy of insurance would still cover the compensatory damage portion of plaintiff's recovery." (Italics added.)

In *Clemmer* and *Peterson*, the Supreme Court plainly concluded that the insured must subjectively intend to harm another in order for his or her conduct to be considered "wilful." (See also *Allstate Ins. Co.* v. *Overton, supra,* 160 Cal.App.3d at p. 849; *State Farm Fire & Casualty Co.* v. *Eddy* (1990) 218 Cal.App.3d 958, 969 [267 Cal.Rptr. 379].) We are, of course, bound by these Supreme Court decisions. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)[3]

We now consider whether information available to Republic when it refused to defend was sufficient to alert it that Mr. Fisher could prevail in his action against Alpha without establishing a preconceived design to injure. If there was such information available then Republic could not properly rely upon section 533 in refusing to defend. In his complaint Mr. Fisher alleged that he was terminated in violation of "the written personnel policies of ALPHA upon which Plaintiff was entitled to depend and [in violation of] the declared public policy of the state of California as enunciated in California Government Code § 129.90 [*sic*]."[4]

When Alpha tendered the defense of the Fisher action to Republic, some four years after it was filed, the Court of Appeal, in a published opinion (*Fisher I*) already had concluded that the Fisher action properly contained a claim that Alpha had failed to take reasonable steps to accommodate Mr. Fisher. (*Fisher* v. *Superior Court, supra,* 177 Cal.App.3d 779 [filed on Feb.

---

[3] Two cases are presently pending before the Supreme Court which involve the question what constitutes "wilful conduct" under section 533. (*State Farm Fire and Casualty Co.* v. *Robin R.* (1989) 216 Cal.App.3d 132 [264 Cal.Rptr. 326] review granted Feb. 15, 1990 (S013639); *J. C. Penney Casualty Ins. Co.* v. *M. K.*■ (Cal.App.).)

[4] It is evident that plaintiff intended to cite Government Code section 12990 et seq., which constitute the FEHA chapter dealing with employment discrimination.

20, 1986].) By the time Republic denied coverage the Court of Appeal had reversed a summary judgment in Alpha's favor, again on the ground that Mr. Fisher could potentially recover from Alpha due to its failure to reasonably accommodate him (*Fisher II*).[5] Under this theory of recovery Mr. Fisher needed to prove only that Alpha acted unreasonably, not that it acted with a preconceived intent to injure him.

Republic argues that "[a]ssuming, for sake of argument, an employer's unlawful failure to reasonably accommodate the needs of an employee on the job could result from purely negligent conduct (an unlikely scenario), an employer's decision to *terminate* an employee cannot. Termination is not an 'unintentional, unexpected, chance occurrence.'"

This argument is constructed upon a faulty premise. "[A] 'wilful act' under section 533 involves a specific intent to injure or harm, not merely a general intent to perform the act." (*Fire Ins. Exchange* v. *Abbott, supra*, 204 Cal.App.3d at p. 1020.) Thus, in order to rely upon section 533 to justify its refusal to defend, Republic must show that information available to it at that time demonstrated that Mr. Fisher was required to establish that Alpha intended him harm, not merely that it intended to act. The termination cases on which Republic relies stand only for the basic proposition that the termination of an employee is no "accident" under the terms of the policies there involved. Those cases involve either policies extending coverage "only for claims against the insured 'resulting from an accidental event'" (See *St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5]) or policies insuring against damages resulting from an "occurrence" which is defined under the policy as "'an accident . . . neither expected nor intended from the standpoint of the insured.'" (See *Loyola Marymount University* v. *Hartford Accident & Indemnity Co.* (1990) 219 Cal.App.3d 1217, 1224 [271 Cal.Rptr. 528]; *Dyer* v. *Northbrook Proper-*

---

[5] In *Fisher I*, the court concluded that Mr. Fisher was entitled to compel Alpha to answer interrogatories relating to its duty to reasonably accommodate the needs of an employee with a physical handicap. In *Fisher II* the Court reversed a summary judgment granted in favor of Alpha on the ground that it failed to establish as a matter of law that Mr. Fisher's cause of action for wrongful termination was without merit. In reaching this conclusion the court explained: "The essence of our holding in Fisher I was that [under the FEHA] a defendant had a duty to consider whether there were other employment opportunities within the company which plaintiff was qualified to perform and which would also have accommodated his medical condition." These appellate opinions constituted the law of the case in the *Fisher* suit. Thus, with limited exceptions not applicable here, they were binding on all subsequent proceedings in that action. (See 9 Witkin, Cal. Procedure (1985 3d ed.) Appeal, § 737 et seq., pp. 705-726.) Moreover, these decisions are well grounded in the applicable FEHA regulations. (See Cal. Code Regs., tit. 2, § 7293.9, subd. (a)(2) [among the reasonable accommodations an employer must attempt to make for an employee with a physical handicap are "[j]ob restructuring, reassignment or transfer, part-time or modified work schedules, acquisition or modification of equipment . . . and other similar actions"].)

*ty & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1546 [259 Cal.Rptr. 298]; *Commercial Union Ins. Co.* v. *Superior Court* (1987) 196 Cal.App.3d 1205, 1207 [242 Cal.Rptr. 454].)

Because the termination of an employee is no "accident" under these policies, no coverage is afforded even though the termination caused unintended damages (*Commercial Union Ins. Co.* v. *Superior Court, supra*, 196 Cal.App.3d at pp. 1208-1209) or it had "only an unintended federally prohibited discriminatory effect." (*Loyola Marymount University* v. *Hartford Accident & Indemnity Co., supra*, 219 Cal.App.3d 1217, 1225.) Stated another way, these cases interpret the policy exclusions to refer to "the insured's general intent to act and not any specific intent to injure." (*Fire Ins. Exchange* v. *Abbott, supra*, 204 Cal.App.3d at p. 1021, fn. 7; cf. *Mullen* v. *Glens Falls Ins. Co., supra*, 73 Cal.App.3d 163, 169-171 [construing "occurrence" more stringently than in the above cases].) As we have seen, a "specific intent to injure" is needed for section 533 to apply. The fact that Alpha's termination of Mr. Fisher was no "accident" means only that Alpha possessed the "general intent" to act. It does not establish that Alpha specifically intended to injure Mr. Fisher. As described above, no such specific intent was necessary for Mr. Fisher to prevail against Alpha on his "failure to reasonably accommodate" theory.

We reject Republic's assertion that "[a]t the very least, an intent to harm should be presumed from the nature of employment termination in violation of discrimination laws." To support this claim Republic relies upon a line of cases standing for the proposition that when an adult engages in criminal sexual misconduct with a minor "an intent to cause at least some harm can be inferred as a matter of law . . . ." (*Allstate Ins. Co.* v. *Kim W.* (1984) 160 Cal.App.3d 326, 332 [206 Cal.Rptr. 609]; *Fire Ins. Exchange* v. *Abbott, supra*, 204 Cal.App.3d 1012.)

As reflected by the exhaustive analysis of the issue in *Fire Ins. Exchange*, the majority of jurisdictions to address this issue have concluded that intent to injure could be inferred from child molestation. Republic has not cited and we are not aware of any California authority expanding this inference outside of the area of sex crimes. Indeed the *Fire Ins. Exchange* court suggests that the inference should be restricted to sex crime cases by distinguishing other cases on the ground that they do not "involve[] adult criminal sexual misconduct with minors." (204 Cal.App.3d at p. 1024.) Additional indication of the limited nature of the inference is found in cases that have reviewed a range of conduct engaged in by insureds where a preconceived intent to injure is not inferred. (See *Clemmer* v. *Hartford Insurance Co., supra*, 22 Cal.3d 865 [second degree murder]; *Peterson* v. *Superior Court, supra*, 31 Cal.3d 147, 158-159 [driving while intoxicated].)

Republic acknowledges a line of cases from other jurisdictions holding that public policy does not preclude coverage of employment discrimination claims. (See *United Pacific Ins.* v. *First Interstate Bancsystems* (D. Mont. 1987) 664 F.Supp. 1390, 1393, reconsidered on other grounds (1988) 690 F.Supp. 917; *School Dist. No. 1, etc.* v. *Mission Ins. Co.* (1982) 58 Ore.App. 692 [650 P.2d 929].) Republic attempts to distinguish these cases on the ground that in each one "the underlying action contained a potential claim of *unintentional conduct*." (Italics in original.) This attempted distinction proves too much. As described above, the Fisher action contained more than a potential claim of unintentional conduct. It also contained an actual claim of such conduct: Alpha's failure to reasonably accommodate Mr. Fisher. Thus, even under Republic's analysis no inference of wilful misconduct is proper. Because Mr. Fisher could have recovered from Alpha for conduct which was not "wilful" under section 533 that statute did not absolve Republic of its duty to defend.

3. *The "Reasonable Expectations" of Alpha Cannot Defeat Republic's Duty to Defend.*

Since we conclude that the Fisher action was not premised solely upon "wilful" conduct we need not determine whether Alpha reasonably expected coverage of such wilful conduct. Republic argues that (1) as a matter of law "Alpha had no reasonable expectation of coverage under the Republic policy"[6] and (2) "[t]here is a triable issue of fact concerning Republic's claim that Alpha never intended or believed it had purchased insurance for Fisher's discrimination claim."[7] Contrary to Republic's assertions, "[t]he doctrine of reasonable expectation of coverage is applicable only where there is an ambiguity in the language of the insurance contract." (*Farm Air Flying Service* v. *Southeastern Aviation Ins. Services, Inc.* (1988) 206 Cal.App.3d 637, 641 [254 Cal.Rptr. 1]; *Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra,* 41 Cal.3d 903, 912 [same]; *Watamura* v. *State Farm Fire & Casualty Co.* (1988) 206 Cal.App.3d 369, 371 [253 Cal.Rptr. 555] [same].) Here, Republic does not refer to any ambiguity in its policy respecting its duty to defend the Fisher action and we see none. Thus Alpha's "reasonable expectations" are not relevant to whether Republic was obligated to assume the defense of the Fisher action. We therefore

---

[6] Republic relies upon the following to support this claim: (A) "[i]t is undisputed that Republic did not charge Alpha a premium for its employers' liability insurance separate and apart from the premium for the workers' compensation insurance." (B) Employer's liability coverage is provided as a "gap-filler" and (C) that "[i]nsurance for employment discrimination would threaten the solvency of workers' compensation carriers who offer employers' liability insurance."

[7] To support this claim Republic relies upon the four-year delay following commencement of the Fisher action before Alpha tendered the defense to Republic and statements made by Alpha during that four-year period indicating its belief no coverage existed.

conclude that the trial court properly summarily adjudicated this issue in Alpha's favor.

## II

### THE FISHER ACTION DID NOT INCLUDE ALLEGATIONS OF DISPARATE IMPACT*

. . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

Let a peremptory writ of mandate issue directing respondent to vacate its order granting Alpha's motion to summarily adjudicate issue seven. In all other respects, Republic's request for relief is denied. Each side is to bear its own costs of suit.

Woods (A. M.), P. J., and George, J., concurred.

A petition for a rehearing was denied October 11, 1990, and petitioner's application for review by the Supreme Court was denied January 4, 1991.

---

* See footnote, *ante*, page 492.