**Larry Reed HOUG, Appellant,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Bethel Lutheran Church in Lester Prairie, Minnesota, Respondents,**

**Evangelical Lutheran Church in America, f/k/a the American Lutheran Church, Defendant,**

**M.C., Appellant.**

No. C1–91–1685.

Court of Appeals of Minnesota.

Feb. 25, 1992.

Review Denied May 15, 1992.

Michael Berens, Kelly & Berens, Minneapolis, for Larry Reed Houg.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, Minneapolis, for State Farm Fire and Cas. Co.

Gerald L. Maschka, Farrish, Johnson & Maschka, Mankato, for Bethel Lutheran Church in Lester Prairie, Minnesota.

Jeffrey R. Anderson, Mark A. Wendorf, Susan Ford Bedor, Reinhardt and Anderson, St. Paul, for M.C.

Considered and decided by KLAPHAKE, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Larry Houg was sued by M.C., a former parishioner who alleged Houg, in the course of providing counseling to M.C., sexually abused her. Houg tendered the defense of M.C.'s action to respondent State Farm, which had issued a church policy covering Houg and Bethel Lutheran Church. State Farm asserted it had no duty to defend or indemnify Houg, and Houg brought the present declaratory judgment action.

State Farm and Houg moved for summary judgment on the issue of State Farm's duty to defend. The trial court granted State Farm's motion and Houg requested a determination, pursuant to Minn.R.Civ.P. 54.02, that there was no just reason for delay and a direction that judgment be entered accordingly. The trial court granted Houg's request. Houg appeals from the final partial judgment and we affirm.

## FACTS

M.C. joined Bethel Lutheran Church as a parishioner in February of 1984. At the time M.C. became a parishioner, Larry Houg was the acting pastor of Bethel Lutheran. M.C. became an active parishioner, teaching a Sunday school class and attending church-sponsored events, including weekly religious services. Beginning in February 1985, M.C. sought marriage, family, emotional and spiritual counseling from Houg. M.C.'s husband also received counseling from Houg.

M.C. sued Houg, Bethel Lutheran Church and the Evangelical Lutheran Church in America. According to the complaint,

7. Beginning in approximately February 1985 defendant Reverend Larry Houg, as [M.C.'s] minister, therapist and counselor, set out on a course of conduct designed to entice and seduce [M.C.] into sexual relations. Ultimately, because of the disparity of the relationship, [M.C.'s] emotional vulnerability, the emotional dependence of [M.C.] upon her therapist, defendant Reverend Larry Houg and through the use of psychotherapeutic deception, defendant Reverend Larry Houg succeeded in seducing and coercing [M.C.] to engage in sexual relations.

8. From February 1985 through March, 1986, while continuing in his role as [M.C.'s] minister and counselor, defendant Reverend Larry Houg regularly and repeatedly sexually abused and sexually exploited [M.C.].

9. As a direct result of the sexual exploitation, sexual abuse and negligent and malicious counseling plaintiff has suffered and will continue to suffer great pain of mind and body, shock, emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

The complaint also alleged that Houg incorrectly instructed M.C. in matters of faith, morals and religious doctrine, negligently entered into a counseling relationship with M.C., negligently failed to withdraw from the counseling relationship and negligently failed to advise M.C. to seek appropriate therapy and counseling. Additionally, in her deposition M.C. stated she suffered from rapid heart beat, anxiety, injuries resulting in hospitalization, a yeast infection transmitted by Houg to M.C., dental problems caused by anxiety, and stomach problems, including ulcer-like symptoms.

Houg has admitted to having sexual contact with M.C. approximately 30 times. Houg knew that it was contrary to the teachings of the Lutheran Church for him to have sexual relations with a parishioner. Contrary to M.C.'s allegations, Houg contended the sexual relationship between himself and M.C. was consensual.

The State Farm policy provided comprehensive business liability coverage (Coverage L). The insuring agreement provided:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage, or personal injury caused by an occurrence to which this insurance applies.

\* \* \* \* \* \*

The Company shall have the right and duty to defend any suit against the insured seeking damages on account of such acts, errors, or omissions, even if any of the allegations of such suit are groundless, false, or fraudulent.

In defining "bodily injury," the policy stated:

[B]odily injury means bodily injury, sickness, or disease sustained by any person which occurs during the policy period,

including death at any time resulting therefrom.

The policy defined "occurrence" as follows:

[A]n accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured and with respect to personal injury, the commission of an offense, or a series of similar or related offenses.

The State Farm policy also provided clergy professional liability coverage (Option CP). Under this coverage, State Farm agreed:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of acts, errors or omissions of the insured arising out of counseling activities or counseling activities of others for which the insured is liable.

Option CP also provided that coverage did not apply:

(8) to liability resulting from any actual or alleged conduct of a sexual nature;

(9) to any dishonest, fraudulent or criminal act or omission of any insured.

### ISSUES

1. Did the trial court err in holding State Farm had no duty to defend under Coverage L?

2. Did the trial court err in holding State Farm had no duty to defend under Option CP?

### ANALYSIS

### STANDARD OF REVIEW

■ Summary judgment is appropriate when there is no genuine issue as to any material fact and a party is entitled to a judgment as a matter of law. Minn. R.Civ.P. 56.03. In reviewing the trial court's grant of summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minnesota Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). On appeal, as in the trial court, the facts must be viewed in the light most favorable to the party against whom summary judgment was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982). Interpretation of an insurance policy is a question of law which this court reviews de novo. *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn. 1978).

### I. COVERAGE L

■ An insurer's duty to defend its insured arises when any part of the claim against the insured is arguably within the scope of coverage afforded by the policy. *Brown v. State Auto. & Cas. Underwriters*, 293 N.W.2d 822, 825–26 (Minn.1980). The duty to defend is broader in scope than the duty to indemnify. *Id.* at 825. An insurer seeking to escape its duty to defend has the burden of establishing that all parts of the cause of action fall clearly outside the scope of coverage. *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 165–66 (Minn.1986).

■ The duty to defend is not limited to the allegations in the complaint. Facts outside of the complaint, known to the insurer, which establish that the insurer must provide a defense may not be ignored. *Lanoue v. Fireman's Fund Am. Ins. Cos.*, 278 N.W.2d 49, 53 (Minn.1979). By the same token, an insurer may rely on facts outside of the complaint and known to the insurer which establish the insurer has no duty to defend. *Farmers & Merchants State Bank of Pierz v. St. Paul Fire & Marine Ins. Co.*, 309 Minn. 14, 17–18, 242 N.W.2d 840, 842–43 (1976).

■ State Farm contends there was no "occurrence" as that term is defined in the State Farm policy because M.C.'s injuries were "expected or intended" by Houg.

[A]n injury is "expected or intended" from the standpoint of the insured if a reason for an insured's act is to inflict bodily injury *or* "when the character of the act is such that an intention to inflict an injury can be inferred" as a matter of law. *See, Rankin v. Farmers Elev. Mutual Ins. Co.*, 393 F.2d 718 (10 Cir.1968).

*Continental Western Ins. Co. v. Toal,* 309 Minn. 169, 177, 244 N.W.2d 121, 125 (1976) (emphasis in original). An intention to inflict injury has been inferred as a matter of law in a number of cases involving sexual abuse. *See Estate of Lehmann v. Metzger,* 355 N.W.2d 425, 426 (Minn.1984) (sexual abuse of minor by relative); *State Farm Fire & Cas. Co. v. Williams,* 355 N.W.2d 421, 424 (Minn.1984) (sexual abuse of physically disabled adult); *Horace Mann Ins. Co. v. Independent School Dist. No. 656,* 355 N.W.2d 413, 416 (Minn.1984) (sexual abuse of student by teacher); *Fireman's Fund Ins. Co. v. Hill,* 314 N.W.2d 834, 835 (Minn.1982) (sexual abuse of foster child).

Houg seeks to avoid the application of these cases by noting that M.C. has alleged "negligent counseling." However, any alleged negligence in Houg's counseling centers on his entering into a sexual relationship with M.C. Any negligent counseling is so intertwined with Houg's sexual exploitation of a psychologically dependent person as to be inseparable.

Houg argues that the proper emphasis is on whether the result of his actions was expected or intended, relying on *North Star Mut. Ins. Co. v. R.W.,* 431 N.W.2d 138 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 13, 1989). *R.W.,* however, involved consensual sexual intercourse between adults, resulting in the negligent transmission of genital herpes from one partner to another. *Id.* at 139. The present case, by contrast, involves allegations that Houg used his position of authority to coerce M.C. into a sexual relationship. M.C. claims she was unable to give legal consent to the sexual contact because of her vulnerable psychological state and Houg's position of authority over M.C. We conclude M.C.'s allegation that Houg used his authority as a pastor and counselor to facilitate his sexual abuse of a psychologically vulnerable person creates an inference of an intent to injure and relieves State Farm of its duty to defend.

## II. OPTION CP

State Farm relies on two exclusions to Option CP as a basis for relieving it from its duty to defend. Those exclusions bar coverage for liability resulting from any conduct of a sexual nature and any dishonest, fraudulent or criminal act of an insured.

### A. *Sex Act Exclusion*

█ In contending the sex act exclusion does not apply, Houg asserts that M.C.'s claim is based on negligent counseling, rather than sexual misconduct. We disagree. Houg points to seven allegations in M.C.'s complaint regarding his supposed negligent counseling. First, Houg notes that M.C. alleges he misinstructed her in matters of faith, morals and religious doctrine. M.C., however, alleges Houg misinstructed her in order to continue the sexual relationship. Second, Houg points to the claims that he was negligent in entering into a counseling relationship with M.C. This allegation, however, is based on Houg's alleged plan to seduce M.C.

The five remaining claims which Houg contends allege negligent counseling include: (1) that Houg continued the counseling after the first instance of sexual conduct; (2) that he did not inform M.C. she had been abused; (3) that he did not seek therapy for himself; (4) that he did not withdraw from the counseling relationship; and (5) that he did not direct M.C. to find other therapy and counseling. Absent the sexual relationship between M.C. and Houg, however, there would be no claim for negligent counseling.

Both State Farm and Houg rely on *St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698 (Minn.1990) to sustain their arguments regarding the sex act exclusion. In *Love,* this court and the Minnesota Supreme Court found that a professional liability insurer was obligated to provide a defense to its insured, a psychotherapist, against claims that the insured had mishandled the transference phenomenon.[1]

---

1. Transference is
   "[t]he process whereby the patient displaces on to the therapist feelings, attitudes and at-

tributes which properly belong to a significant attachment figure of the past, usually a parent, and responds to the therapist according-

*Id.* at 702; *St. Paul Fire & Marine Ins. Co. v. Love,* 447 N.W.2d 5, 10 (Minn.App. 1989). As this court noted, however, it is the presence of the transference phenomenon which limits *Love* to its facts. *Love,* 447 N.W.2d at 8–10. In affirming this court, the Minnesota Supreme Court also focused on the presence of the transference phenomenon:

> When, therefore, the transference phenomenon pervades the therapeutic alliance, we believe the *sexual conduct between therapist and patient arising from the phenomenon may be viewed as a consequence of a failure to provide proper treatment of the transference.* In other words, the patient's claim results from the providing of improper professional services or the withholding of proper services.

*Love,* 459 N.W.2d at 702 (emphasis added). The complaint did not allege that Houg mishandled the transference phenomenon, thus, *Love* is inapplicable.

In addition, the supreme court in *Love* stated,

> Psychotherapy purports to concern itself with emotional and sexual dysfunction, and the insurance company agrees to provide coverage for the risks inherent in the services provided by therapists. *The occupational hazards attendant on transference are such a risk.* If the underwriter does not want to provide coverage for this particular peril, it would seem *it might exclude any claim for damages based on professional services in the treatment of transference which results in a sexual relationship between the insured and the patient.*

*Id.* (emphasis added). State Farm has excluded any claim for liability resulting from any conduct of a sexual nature.

### B. *Bad Acts Exclusion*

State Farm argues the exclusion for criminal or dishonest acts also precludes coverage for Houg's actions. The trial court found this exclusion inapplicable.

State Farm has not filed a notice of review of this determination, and we decline to consider it. *See Ed Kraemer & Sons, Inc. v. Transit Cas. Co.,* 402 N.W.2d 216, 218 n. 1 (Minn.App.1987), *pet. for rev. denied* (Minn. May 18, 1987).

### DECISION

The trial court correctly found the intentional acts and sex acts exclusions relieve State Farm of its duty to defend. Absent the transference phenomenon, the *Love* decision does not apply. Furthermore, State Farm excluded coverage for liability resulting from any conduct of a sexual nature.

Affirmed.

---

ly." S. Waldron–Skinner, *A Dictionary of Psychotherapy,* 364 (1986).
*St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698, 700 (Minn.1990). In countertrans-

ference, the therapist's problems are displaced on to the patient. *Id.*