[No. S025417. Mar. 11, 1993.]

HORACE MANN INSURANCE COMPANY, Plaintiff and Respondent, v. BARBARA B. et al., Defendants and Appellants.

**COUNSEL**

Kinkle, Rodiger & Spriggs and James W. Parker for Defendants and Appellants.

Latham & Watkins, David L. Mulliken, Kristine L. Wilkes, Daniel E. Butcher, Brobeck, Phleger & Harrison, Tom M. Freeman, Nossaman, Guthner, Knox & Elliott, Kurt W. Melchior and Jared E. Peterson as Amici Curiae on behalf of Defendants and Appellants.

Kegel, Tobin, Hamrick & Truce, Hamrick & Garrotto and Charles H. Carpenter for Plaintiff and Respondent.

Thelen, Marrin, Johnson & Bridges, Curtis A. Cole, Anthony J. Barron, Horvitz & Levy, David M. Axelrad, Mitchell C. Tilner and Ellis Horvitz as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**PANELLI, J.**—We granted review in this case to address the question of whether an insurer may owe a duty to defend a teacher who is insured under an educator's liability policy in a minor student's action seeking damages resulting from the teacher's sexual and other misconduct. Relying on our decision in *J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009, 1019 [278 Cal.Rptr. 64, 804 P.2d 689], the Court of Appeal concluded that the insurer had no duty to defend, and affirmed the decision of the trial court awarding summary judgment to the insurer in its declaratory relief action.

The lower courts erred. Because the evidence adduced in the summary judgment proceedings demonstrated the existence of unresolved factual issues as to the insurer's potential liability under the policy based on misconduct separable from the sexual molestation, the insurer remained under a duty to defend the underlying action. The judgment of the Court of Appeal is, accordingly, reversed.

### FACTUAL AND PROCEDURAL BACKGROUND

During the 1986-1987 school year, Barbara B. was a 13-year-old student at Kramer Junior High School in the Placentia Unified School District (the

District). Barbara B. and her parents sued her seventh grade band teacher, Gary Lawrence Lee, alleging she had suffered injuries caused by Lee's intentional and negligent conduct toward her.[1] The conduct was alleged to have consisted of sexual molestation and other harassing conduct.[2]

Lee, who pleaded nolo contendere to one count of violating Penal Code section 288, subdivision (a), arising out of his molestation of Barbara, was insured under an educator's liability policy issued by Horace Mann. The policy covered damages "which the insured shall become legally obligated to pay as a result of any claim arising out of an occurrence in the course of the insured's educational employment activities, and caused by any acts or

---

[1]The complaint also named the District and various other persons as defendants, but for present purposes we are concerned only with Lee as the insured of Horace Mann Insurance Company (Horace Mann).

[2]As detailed in a letter written by Barbara B.'s attorney to Horace Mann, and submitted in opposition to Horace Mann's motion for summary judgment in the declaratory relief action, the other misconduct consisted of the following acts:

"1. Giving tardy notes to Barbara [B.] based upon solely her request for a tardy note;

"2. Pulling her out of class for the entire class;

"3. Allowing Barbara [B.] to sit on his lap in front of other students . . . ;

"4. Kissing Barbara [B.] on the forehead in front of other students;

"5. Hugging Barbara [B.] in front of other students;

"6. Putting his arm around Barbara [B.] in front of other students;

"7. Allowing Barbara [B.] to be in the band room alone[;]

"8. Allowing Barbara [B.] to be in the band room alone with himself and Susan Bowen;

"9. Allowing Barbara [B.] to be in the band room alone with Camry Southern and himself;

"10. Regularly making sexual and sarcastic jokes in regard to Barbara [B.], or impliedly relating to Barbara [B.], in front of the band class, referencing the way a girl dressed, and in making jokes offensive to females. General discussions of sexual conduct in front of the class[;]

"11. Gary Lee's being alone in his windowed office with Barbara [B.][;]

"12. The allowing and perpetuating of common rumors among students of a relationship between Gary and Barbara as a joke. 'O, Mr. Lee took Barbara home last Friday.'[ ]

"13. Barbara [B.] was considered a teacher's pet of Gary Lee in seventh grade[;]

"14. Gary Lee had a flirtatious behavior towards Barbara [B.][;]

"15. The dollar dance, and insinuation that Barbara could be bought for a dollar[;]

"16. Joking about the girls coming back and seeing him when they are 18[;]

"17. Gary Lee's joking about his female students in front of his friends[;]

"18. Referring to Barbara [B.] as Pebbles;

"19. Gary Lee had a childish behavior[;]

"20. Gary Lee was perverted and immature[;]

"21. Gary Lee referred to Barbara [B.] as 'jail bait,' or 'San Quentin jail bait' in front of students, his friends, band parents and student teachers[;]

"22. Gary Lee had discussions with Barbara's teachers about Barbara being with him and to assume that she was with him at all times that she was late or absent from their classes[;]

"23. Barbara was teased by students in front of adults as being Gary Lee's girlfriend, which was also laughed at by the students, adults, and Gary Lee[;]

"24. Attempts on the part of Gary Lee to get Barbara [B.] alone[;] . . . and

"25. Threats by Gary Lee that he would harm himself . . . ."

omissions of the insured . . . ." The policy excluded coverage of civil suits arising from criminal acts other than corporal punishment. It contained a promise to defend Lee in "any civil suit against the insured seeking damages which are payable under the terms of this policy even if such suit is groundless, false or fraudulent . . . ."

Horace Mann accepted tender of defense in Barbara B.'s suit against Lee, reserving its rights to disclaim coverage or an obligation to defend. In its reservation-of-rights letter, Horace Mann took the position that in light of Lee's criminal conviction, the allegations of the complaint did not fall within policy coverage of educational activities.[3] Horace Mann also cited the policy's exclusion for civil suits arising out of an act, other than corporal punishment, that has been held to be a crime and the exclusion for occurrences involving damages that are the intended consequence of action taken by the insured.

Horace Mann filed a declaratory relief action, seeking a determination of its duty to defend or indemnify Lee in Barbara B.'s suit. Contending that as a matter of law its policy provided no coverage because Lee's conduct was intentional within the meaning of Insurance Code section 533[4] and unrelated to educational activities, Horace Mann moved for summary judgment. In support of the motion, it submitted a copy of Lee's plea of nolo contendere in the felony case. Barbara B. opposed the motion, submitting a proposed second amended complaint—alleging that Lee "negligently, carelessly, recklessly, and wantonly engaged in sexual and nonsexual acts with the minor plaintiff"—and a letter written by her attorney, detailing acts of misconduct by Lee not amounting to molestation (*ante*, fn. 2). Before the trial court issued its ruling, the proposed second amended complaint was filed in the underlying action.

The trial court granted the motion for summary judgment, determining that all of Lee's acts were either sexual or intentional in nature, and entered

---

[3]Barbara B. contends that Horace Mann failed to raise the "exclusion for noneducational activities" at the outset of the underlying litigation, and therefore waived it as a matter of law. The contention lacks merit. First, as Horace Mann points out, the policy does not contain an exclusion for noneducational activities; rather, that limitation is expressed in the insuring clause itself. Second, Horace Mann's reservation-of-rights letter clearly stated its position that the allegations of Barbara B.'s complaint "do not fall within the basic coverage of the policy for educational employment activities." Moreover, Barbara B. failed to raise this issue below, except in a petition for rehearing.

[4]Insurance Code section 533 provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." The statute is in effect an implied exclusionary clause that must be read into all insurance policies. (*J. C. Penney Casualty Ins. Co.* v. *M. K.*, *supra*, 52 Cal.3d at p. 1019.)

judgment for Horace Mann. Barbara B. appealed, and the Court of Appeal affirmed.

### DISCUSSION

 It is by now a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168] (*Gray*).) As we said in *Gray*, "the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy." (*Id.* at p. 275, italics in original.) Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. (*Id.* at p. 278; *Signal Cos.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 367 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75]; *Saylin* v. *California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 263 [224 Cal.Rptr. 493].)

 The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. (*Gray, supra,* 65 Cal.2d at p. 276.)

 Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim. (*Hogan* v. *Midland National Ins. Co.* (1970) 3 Cal.3d 553, 564 [91 Cal.Rptr. 153, 476 P.2d 825]; *Republic Indemnity Co.* v. *Superior Court* (1990) 224 Cal.App.3d 492, 498 [273 Cal.Rptr. 331]; *California Union Ins. Co.* v. *Club Aquarius* (1980) 113 Cal.App.3d 243, 248 [169 Cal.Rptr. 685].) (Horace Mann has not attempted to establish such an allocation.) Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. (*CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 607 [222 Cal.Rptr. 276].)

During the pendency of the appeal in this case, we addressed the question whether a liability insurer owes a duty to indemnify an insured in an action for damages arising out of child molestation. We answered in the negative. In *J. C. Penney Casualty Ins. Co.* v. *M. K., supra,* 52 Cal.3d 1009 (*J. C. Penney*), the liability insurer sought a declaratory judgment that it was not required to indemnify its insured, who had pleaded guilty to violation of

Penal Code section 288, subdivision (a), in the child victim's action seeking damages for sexual molestation. We held that as a matter of law Insurance Code section 533 precludes coverage in such a case. (*Id.* at pp. 1019, 1021.) Because child molestation is inherently harmful, we rejected the argument that a molester's lack of subjective intent to harm the victim can avoid the bar of Insurance Code section 533. We emphasized the narrowness of our holding, stressing we were addressing only child molestation and no other type of wrongdoing. (*Id.* at p. 1028.)

 Horace Mann relies heavily on *J. C. Penney, supra,* 52 Cal.3d 1009, to support its position in this case. Reduced to its essence, Horace Mann's argument runs thus: Barbara B. alleges that Lee's sexual and other misconduct injured her; the evidence of Lee's plea of nolo contendere to one count of violating Penal Code section 288, subdivision (a), establishes that he sexually molested her; under *J. C. Penney, supra,* Horace Mann has no duty to indemnify Lee for claims arising out of that sexual molestation; Lee's other alleged misconduct was directly related to the uninsurable molestation and was not in the course of his educational employment activities; therefore, under this scenario, Horace Mann has no duty to defend or indemnify Lee against the other allegations of misconduct.

The flaw in Horace Mann's reasoning is its unsupported assumption that the other alleged misconduct necessarily was part of the molestation and not in the course of Lee's educational activities. The evidence presented in support of the summary judgment motion fails to clearly establish the inferences necessary to sustain the ruling. Indeed, the evidence supported the potential for liability apparent on the face of the complaint and, with it, Horace Mann's duty to defend.

 As noted above, *Gray* teaches that when facts extrinsic to the complaint, gathered from the insured or other sources, suggest that the claim may be covered under its policy, the insurer is held to a duty to defend the action. (*Gray, supra,* 65 Cal.2d 263, 276.) The courts of appeal have expressed varying views on the question of whether the insurer must defend when the complaint on its face shows a potential for coverage but extrinsic facts are to the contrary. (Compare *State Farm Mut. Auto. Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538, 548 [95 Cal.Rptr. 296] [holding extrinsic evidence justified denial of defense], *Saylin* v. *California Ins. Guarantee Assn., supra,* 179 Cal.App.3d 256, 264 [same] and *Fire Ins. Exchange* v. *Jiminez* (1986) 184 Cal.App.3d 437, 442 [229 Cal.Rptr. 83] [same] with *CNA Casualty of California* v. *Seaboard Surety Co., supra,* 176 Cal.App.3d 598, 606 (*CNA*) [holding extrinsic evidence may create, but not eliminate, duty to defend], *Jenkins* v. *Insurance Co. of North America* (1990) 220 Cal.App.3d

1481, 1489 [272 Cal.Rptr. 7] [citing *CNA* with approval] and *California Ins. Guarantee Assn.* v. *Wood* (1990) 217 Cal.App.3d 944, 948 [266 Cal.Rptr. 250] [same].)

 Here, we need not address the circumstances under which extrinsic evidence might defeat the duty to defend. As of the time of the summary adjudication proceedings, there remained unresolved factual disputes concerning Gary Lee's conduct apart from his molestation of Barbara, and, with those disputes, the potential for liability under the policy. Therefore, Horace Mann failed to meet its burden of showing it was entitled to judgment as a matter of law, and the trial court erred in awarding it summary judgment. (Code Civ. Proc., § 437c, subd. (c).)

Barbara B.'s second amended complaint, on its face, alleged injury resulting from Lee's "negligent[ ], careless[ ], reckless[ ], and wanton[ ] . . . sexual and nonsexual" conduct. Although lacking in specificity, the complaint evinced a possibility that Gary Lee would be held liable for damages within the coverage of the policy stemming from Lee's negligent nonsexual conduct in his public relationship with Barbara.

Any doubts as to whether the complaint gave rise to a duty to defend Lee were resolved by the materials adduced in the summary judgment proceedings. Extrinsic proof that Lee had been convicted of violating Penal Code section 288, subdivision (a), certainly established that there had been at least one instance of sexual misconduct outside the policy coverage under the rule of *J. C. Penney, supra,* 52 Cal.3d 1009, and thus outside of any duty to defend. The same proof also demonstrated that Lee's sexual misconduct occurred outside the course of his educational employment activities and was therefore not covered under the terms of the policy. (See *Horace Mann Ins. Co.* v. *Analisa N.* (1989) 214 Cal.App.3d 850, 853-856 [263 Cal.Rptr. 61].) However, the fact of Lee's conviction could not eliminate the duty to defend against the other allegations of misconduct, not amounting to criminal molestation. Nothing in the complaint or the materials submitted in connection with the summary judgment proceedings enabled Horace Mann to determine that those allegations were related to the molestation, or that the other alleged misconduct was outside the course of Lee's educational employment activities. A teacher's educational role requires constant, close interaction with students; it is not always easy for a court to draw the line between appropriate and inappropriate interaction. Neither precedent nor logic dictates that a molester cannot also be liable for torts of negligence against the victim which are apart from, and not integral to, the molestation.

It bears emphasis that this case reaches us in somewhat of a factual vacuum. We must not lose sight of the record before us. The record is devoid

of evidence which establishes the chronology or sequence of events comprising the alleged misconduct or that these actions were integral to the molestation. For instance, the record is devoid of evidence demonstrating that Lee's acts of public embarrassment of Barbara occurred in such close temporal and spatial proximity to the molestation as to *compel* the conclusion that they are inseparable from it for purposes of determining whether Horace Mann owed a duty to defend Lee. This being so, unlike the dissent, we cannot, at this point and on this record, confidently conclude that no such duty existed. ■ Under the law of this state, we must resolve the uncertainty in the insured's favor. (*CNA, supra,* 176 Cal.App.3d at p. 607.)

■ Horace Mann contends that Lee's alleged misconduct apart from the molestation could not possibly give rise to liability because the admitted molestation is the "dominant factor" in this case. The argument misconceives the role of the court in determining the duty to defend. We look not to whether noncovered acts predominate in the third party's action, but rather to whether there is *any* potential for liability under the policy. (*Gray, supra,* 65 Cal.2d at pp. 275-276.) Since an insurer has a duty to defend the entire third party action if any claim encompassed within it potentially may be covered (absent allocation, as noted above), the mere fact that Horace Mann could not indemnify Lee for the molestation did not eliminate its duty to defend other, possibly covered claims. (*Hogan* v. *Midland National Ins. Co.,* *supra,* 3 Cal.3d 553, 564 [91 Cal.Rptr. 153, 476 P.2d 825]; see also *State Farm Fire & Casualty Co.* v. *Eddy* (1990) 218 Cal.App.3d 958, 965 [267 Cal.Rptr. 379] ["[A]lthough a determination on the merits might show that there was intentional conduct . . . the [underlying] complaint alleged both negligent and intentional torts; therefore, State Farm must defend . . . ."].)

Horace Mann argues that every sexual molestation case is susceptible to allegations of misconduct not rising to the level of sexual molestation, and that, as a consequence, recognition of a duty to defend in this case would encourage parties to "plead around" *J. C. Penney.* Along similar lines, the Court of Appeal characterized much of the misconduct recited in counsel's letter as "parasexual" and therefore inseparable from the molestation.

We think such an argument misses the point of the allegations contained in counsel's letter. The gravamen of each of the so-called "parasexual" actions—"[a]llowing Barbara B[.] to sit on his lap in front of other students," "[k]issing Barbara B[.] on the forehead in front of other students," "[h]ugging Barbara B[.] in front of other students," "[p]utting his arm around Barbara B[.] in front of other students"—was its commission *in front of other students.* Horace Mann has not shown that any of those public acts were inherently harmful or amounted to sexual molestation, so as to come within

*J. C. Penney*'s bar to indemnity. The *possibility* of a duty to indemnify remains because the alleged acts arose from Lee's interaction with students in the course of his educational activities. While one might reasonably question the appropriateness of teachers engaging in such behavior *in the classroom*, we cannot say, as a matter of law on the record before us, that such conduct does not raise a possibility of a duty to indemnify under the policy of insurance which was issued to Lee.

If the parties to a declaratory relief action dispute whether the insured's alleged misconduct should be viewed as essentially a part of a proven sexual molestation, or instead as independent of it and so potentially within the policy coverage, and if the evidence pertaining to the alleged misconduct that the parties submit does not permit the court to eliminate either of these views, then factual issues exist precluding summary judgment in the insurer's favor. Indeed, the duty to defend is then *established*, absent additional evidence bearing on the issue. (See *Hogan* v. *Midland National Ins. Co., supra*, 3 Cal.3d at p. 564.) Here, the parties disputed not only whether the acts alleged to be harassment constituted part of the molestation, but also whether those acts actually occurred. The latter dispute implicates the insurer's duty to defend groundless claims.

In many cases the plaintiff's allegations of molestation and other misconduct may be inseparably intertwined (e.g., when the molestation allegedly was carried on in secret, without any distinct injury to the plaintiff's social relations). Lee's nolo plea to one count of violating Penal Code section 288, subdivision (a), established his sexual molestation of Barbara, but his alleged public embarrassment of Barbara B. affected a different interest.[5] Horace Mann failed to make the showing necessary to eliminate its duty to defend.

We note, too, that if facts known to the insurer suggest a possibility that what plaintiff alleges to be sexual molestation may be found to be merely a negligent touching (see, e.g., *State Farm Fire and Cas. Co.* v. *Nycum* (9th Cir. 1991) 943 F.2d 1100), then there is potential coverage and consequently a duty to defend. This was the posture of *Gray, supra*, in which the plaintiff alleged that the insured had " 'wilfully, maliciously, brutally, and intentionally assaulted' " him, while the insured contended he had acted in self-defense. We held that the possibility of a judgment based on nonintentional conduct entailed a duty to defend. (*Gray, supra*, 65 Cal.2d 263, 276.)

The Court of Appeal characterized the other conduct listed in counsel's letter as "genuinely nonsexual conduct which cannot possibly give rise to

---

[5]In the letter written by Barbara B.'s attorney to Horace Mann, submitted in opposition to Horace Mann's motion for summary judgment, Lee's acts of public embarrassment of Barbara are listed in items 3-6, 10, 12, 15-18, and 21-23 (*ante*, fn. 2).

*any damages.*" The Court of Appeal concluded that "[i]f *facts* stated in the complaint or otherwise brought to the attention of the insurer *will not support any damages* within the scope of the policy, there is no potential for coverage and therefore no duty to defend." (Italics in original.)

This conclusion ignores the insurer's promise to defend the insured against groundless, false, and fraudulent claims. An insured buys liability insurance in large part to secure a defense against *all* claims potentially within policy coverage, even frivolous claims unjustly brought. To adopt the reasoning of the Court of Appeal would be to read out of existence the "groundless, false, or fraudulent" clause that is universally common in liability insurance policies. If Barbara B.'s claims were indeed so insubstantial as not to warrant any damages, Horace Mann should have raised that defense in the underlying action for Gary Lee's benefit, rather than in this declaratory relief action to his detriment. (Cf. *Garriott Crop Dusting Co.* v. *Superior Court* (1990) 221 Cal.App.3d 783, 797 [270 Cal.Rptr. 678].)

Our decision is no license to "plead around" *J. C. Penney, supra,* 52 Cal.3d 1009. We do not sanction relabelling child molestation as negligence in order to secure insurance coverage for the plaintiff's injuries. ■ We merely hold to the established rule that a potential for coverage, whether found within the four corners of the complaint or in facts extrinsic to it, gives rise to the defense duty. (*Gray, supra,* 65 Cal.2d at pp. 275-277.)

■ Horace Mann raises the specter of a perpetual, indefeasible defense obligation. We believe its fears are exaggerated, for that is not what *Gray* exacts from insurers. By way of illustration, we note that when the underlying action is a sham, the insurer can demur or obtain summary judgment on its insured's behalf and thereby obviate the necessity of further defense. And a declaratory relief action remains available when the facts of the underlying lawsuit are indeed not of the nature and kind covered by the policy. (See *Gray, supra,* 65 Cal.2d at p. 274; *United Pacific Ins. Co.* v. *Hall* (1988) 199 Cal.App.3d 551, 556 [245 Cal.Rptr. 99] [policy obligating an insurer to defend action for damages did not obligate insurer to defend insured in criminal or administrative proceedings where damages were not sought]; *Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1316-1318 [241 Cal.Rptr. 427] [commercial multi-peril policy; no duty to defend action sounding in contract]; *Jaffe* v. *Cranford Ins. Co.* (1985) 168 Cal.App.3d 930, 934 [214 Cal.Rptr. 567] [psychiatrist's malpractice policy did not obligate insurer to defend its insured in criminal prosecution for Medi-Cal fraud and theft].)

Some may consider the result in this case—that an insurer may be required to defend an insured who has sexually molested a child against

claims arising from harassing conduct separable from the molestation and not amounting to criminal activity—to be unfortunate. No one, of course, wants to provide aid and comfort to child molesters. But courts cannot allow legal reasoning to yield to emotionalism when determining the extent of an insurance carrier's defense duty. It is important to remember that no public policy forbids the *defense* of claims alleging intentional acts. As we said in *Gray*, "the statutes forbid only contracts which indemnify for '*loss*' or '*responsibility*' resulting from wilful wrongdoing. Here we deal with a contract which provides for *legal defense* against an action charging such conduct; the contract does not call for indemnification of the insured if the third party plaintiff prevails. In the second place, as we pointed out in *Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 648 [39 Cal.Rptr. 731, 394 P.2d 571], the statutes 'establish a public policy to prevent insurance *coverage* from encouragement of wilful tort.' . . . [A] contract to *defend* an assured upon mere accusation of a wilful tort does not encourage such wilful conduct." (*Gray, supra,* 65 Cal.2d at pp. 277-278, italics added.)

As Horace Mann failed to prove that no potential for liability under its policy arose out of the underlying suit against its insured, the trial court erred in granting summary judgment in Horace Mann's favor in this declaratory relief action.

## Disposition

The judgment of the Court of Appeal is reversed and the action is remanded for further proceedings in accordance with this opinion.

Lucas, C. J., Mosk, J., Kennard, J., and George, J., concurred.

**BAXTER, J.**—I reluctantly concur in the result. As the majority suggest, it is not clear that *all* of the in-school "misconduct" alleged in counsel's letter was either so connected to the molestation, or so intentionally or inherently injurious in its own right, as to constitute uninsurable "wilful acts." (Ins. Code, § 533.) Thus, at the time the summary judgment motion was decided, Horace Mann Insurance Company could not establish beyond doubt that Barbara's action against Gary Lawrence Lee included only noncovered claims. On the other hand, Horace Mann offered no "undeniable" evidence that the defense of the potentially covered claims was severable. Accordingly, Horace Mann was not then entitled to escape defending the entire suit.

For example, among counsel's allegations were that Lee gave Barbara tardy notes on request, allowed himself to be alone with Barbara in his office and in the band room, referred to Barbara as "Pebbles," told other teachers to

assume Barbara was with him if she was late or absent from their classes, made Barbara a teacher's pet, and behaved in a childish and immature manner. Acts such as these are not inherently sinister. In context, they *may* have been "wilful" and therefore noncovered, either because they were part of the molesting conduct or because they were otherwise intentionally hurtful, but the record on summary judgment does not compel that conclusion. On the other hand, Horace Mann did not attempt to establish that even if these acts might fall within policy coverage, they were so *unrelated* to the molestation as to be "undeniab[ly]" separable for purposes of defense. Until Horace Mann could show that these acts were either clearly noncovered or clearly severable, it remained obligated to defend all aspects of Barbara's suit.

However, I cannot accept the majority's implication that certain other conduct, clearly "wilful" even on this limited record, might also support Horace Mann's duty to defend. The majority insist that even the public hugging, kissing, and lap sitting alleged by Barbara's counsel were not "wilful" wrongs beyond doubt. (Maj. opn., *ante,* at pp. 1084-1085.) On this record, that conclusion strains common sense.

As the majority indicate, a teacher's affectionate physical contact with a student is not necessarily a "wilful" tort. But I can draw no other inference from an allegation that Lee "allow[ed]" 13-year-old Barbara to sit on his lap in front of other students. I believe that behavior of this kind by an adult teacher toward this student, even when viewed in isolation, would be widely understood as purposeful harassment beyond all permissible bounds of the educational relationship. As with molestation itself, a purposeful act of sexual harassment "is the harm." The perpetrator, insofar as mentally competent, cannot be heard to say that it was not "wilful" because he or she intended no injury. (Compare *J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009, 1021 [278 Cal.Rptr. 64, 804 P.2d 689].)

Public hugging and kissing by a teacher may not be quite so inherently suspect. As the Court of Appeal observed, however, sinister sexual context is supplied here by the undisputed fact of a private molestation during the same general time period. Though a majority of this court suggest otherwise, a fair and realistic appraisal of the entire summary judgment record leaves little room for legitimate dispute about the improper sexual motivation, and thus the "wilful[ness]," with which these alleged public acts were committed.[1]

The majority recognize the "unfortunate" public policy implications of providing this admitted child molester with a tort defense at his insurer's

---

[1]The majority imply (maj. opn., *ante,* at pp. 1084-1085) that so long as a dispute remains whether the public harassment actually occurred, Horace Mann must be held to its duty to defend potentially "groundless" claims. However, the duty to defend groundless claims only

expense. (Maj. opn., *ante,* at pp. 1086, 1087.) We should not enhance the damage by suggesting that inherently wilful acts of sexual harassment support the duty to defend.

Finally, I share Justice Arabian's concern that the majority too easily dismiss the problem of artful pleading around *J. C. Penney.* (See maj. opn., *ante,* at p. 1086.) As the majority suggest, the insurer is free to use the litigation process to winnow sham claims from a molestation suit. However, it is well to remember that from the insurer's perspective, the duty to defend, with its attendant costs, imposes the pressure to settle.

Thus, it may well behoove a molestation victim to find any threadbare means of pleading the molester's insurer into the suit. However groundless such pleading might ultimately prove, it can supply invaluable leverage toward a compromised recovery from the insurer's funds. If the molester is judgment-proof except for insurance, the victim has every reason to seek even a much-discounted settlement rather than litigate to a worthless judgment against the uncovered tortfeasor. When analyzing duty-to-defend issues, we should never lose sight of these practical realities.

With these reservations, I concur in the majority's result.

**ARABIAN, J.**—I respectfully dissent.

At its best, a judicial opinion not only decides a case, but also provides a factually accurate and reasoned statement of the grounds which impel the result. In this way, each decision effectively becomes an exercise in political and moral leadership. As Justice Holmes observed, "Every opinion tends to become a law." (*Lochner* v. *People of State of New York* (1905) 198 U.S. 45, 76 [49 L.Ed. 937, 949, 25 S.Ct. 539].) Thus, as I have elsewhere observed, the court's fundamental responsibility is "to place before the people . . . the common sense of the subject, not merely in the idiom of the law, but in terms so plain, firm and true as to compel their assent." (*Sands* v. *Morongo Unified School Dist.* (1991) 53 Cal.3d 863, 915 [281 Cal.Rptr. 34, 809 P.2d 809] (conc. opn. by Arabian, J.)

Recently, in *J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009 [278 Cal.Rptr. 64, 804 P.2d 689] (*J. C. Penney*), we had the occasion to articulate an important policy concerning the availability of insurance benefits for wilful misconduct. Construing section 533 of the Insurance Code,

applies when the claims, if *not* groundless, might be covered. There is no duty to defend against allegations which, whether true or false, are clearly beyond policy coverage. Thus, if it is clear that the acts alleged could only constitute wilful harassment, any dispute about their truth or falsity cannot form the basis for the duty to defend.

we held that public policy prohibits an insurer from providing coverage for injuries resulting from the sexual molestation of a child. Whatever the subjective beliefs, a child molester cannot disclaim an intent to harm the victim. (*Id.* at p. 1021.) Thus, we joined the vast majority of jurisdictions which hold such misconduct to be noncompensable.

Here, we are confronted with the argument that a child molester who not only molests his victim, but also enters a plea of nolo contendere to the charge of lewd and lascivious conduct, and subjects her to to a continuous course of seduction culminating in the sexual violation, cannot be said, as a matter of law, to have intended harm. It is claimed that such a case is distinguishable from *J. C. Penney, supra*, 52 Cal.3d 1009, because the molester's "nonsexual" acts "negligently" caused the victim unintended emotional distress, thus triggering the insurer's duty to defend, if not indemnify, the child molester.

Fundamental common sense and sensitivity must compel the rejection of such a claim. Hugging, kissing or merely flirting with a minor become *intentional* acts of emotional, if not physical, violence when, as here, they are used to accomplish the sexual gratification of an adult. "The night and day distinction between acts of compassion and those motivated by wanton salacity is one which the reasonable person could not confuse." (*Whaley* v. *State* (Okla. Crim. 1976) 556 P.2d 1063, 1064.) Accordingly, the same reasoning and policies which informed our decision in *J. C. Penney, supra*, 52 Cal.3d 1009, apply with equal force here. It is unfortunate that those laudable policies and that decision should be undermined so soon after their announcement.

DISCUSSION

### 1. *Background*

This court has long acknowledged the duty of an insurer to defend its insureds against claims which create a potential for coverage, including claims that are groundless, false or fraudulent. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273-275 [54 Cal.Rptr. 104, 419 P.2d 168].) However, it is equally settled that " 'where there is no possibility of coverage, there is no duty to defend.' " (*Fire Ins. Exchange* v. *Abbott* (1988) 204 Cal.App.3d 1012, 1029 [251 Cal.Rptr. 620].) Although courts traditionally look to the complaint and the terms of the policy to determine that potential, we made clear in *Gray* that the duty to defend may be triggered by *extrinsic* facts apprising the insurer of the possibility of coverage. (65 Cal.2d at pp. 276-277.)

Conversely, where extrinsic facts conclusively *eliminate* any potential for coverage, an insurer may, at its own risk, decline to defend even where the bare allegations in the complaint suggest potential liability. (*State Farm Mut. Auto. Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538, 548-549 [95 Cal.Rptr. 296]; *Atlas Assurance Co.* v. *McCombs Corp.* (1983) 146 Cal.App.3d 135, 145 [194 Cal.Rptr. 66]; *Saylin* v. *California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 263-264 [224 Cal.Rptr. 493]; *Fire Ins. Exchange* v. *Jiminez* (1986) 184 Cal.App.3d 437, 442-443 [229 Cal.Rptr. 83].) As Justice Tobriner cogently explained in *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, "[T]he duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources." (*Id.* at p. 276.)

There is no potential for coverage where the gravamen of a complaint is the sexual molestation of a child. (*J. C. Penney, supra,* 52 Cal.3d 1009, 1014.) As we there explained, "The very essence of child molestation is the gratification of sexual desire. The act *is* the harm." (*Id.* at p. 1021, italics added.) Hence, as a matter of law Insurance Code section 533 precludes coverage. (*Id.* at pp. 1014, 1028.) It follows, under settled law, that the insurer has no duty to defend such a case. (*Fire Ins. Exchange* v. *Abbott, supra,* 204 Cal.App.3d 1012, 1029.)

### 2. *Duty to Defend for Insured's Related Misconduct*

As this and other cases sadly illustrate, the criminal act of sexual molestation (Pen. Code, § 288) is often accompanied by ancillary misconduct designed to facilitate the ultimate sexual exploitation. Such acts may include attempts to isolate the minor from his or her peers, induce an emotional dependence, or arouse a precocious sexual response though manipulative foreplay such as kissing, petting or hugging. (See, e.g., *John R.* v. *Oakland Unified School Dist.* (1989) 48 Cal.3d 438 [256 Cal.Rptr. 766, 769 P.2d 948], [teacher used private tutoring sessions to "develop a close relationship" with the minor which he sexually exploited]; *Fire Ins. Exchange* v. *Abbott, supra,* 204 Cal.App.3d at p. 1017 [teacher made student feel that he "was his only friend and was very supportive" to accomplish subsequent sexual molestation]; *State Farm Fire and Cas. Co.* v. *Abraio* (9th Cir. 1989) 874 F.2d 619, 623 [molester "sought opportunities to be alone with (the minor), taking her on motorcycle rides and camping trips far from the protection of her family."].)

This genre of premeditated sexual manipulation is present here. Defendant, Barbara B., alleges that her teacher, Gary Lee, engaged in a calculated course of misconduct which included removing her from class, arranging to be alone with her during the school day, allowing her to sit on his lap,

kissing, hugging and putting his arm around her, making sexually suggestive jokes, fomenting rumors of a sexual relationship with her, making her his "teacher's pet," and engaging in childish and flirtatious behavior.

Viewing these allegations in still-frame isolation, the majority assert that "[n]othing in the complaint or the materials submitted in connection with the summary judgment proceedings enabled Horace Mann to determine that those allegations were related to the molestation . . . ." (Maj. opn., *ante*, p. 1083.) On the contrary, the record discloses that the "nonsexual" allegations and the sexual molestation were not only "related," but effectively inseparable. The very document in which defendant recites Lee's litany of "nonsexual" misconduct states that these acts served to isolate Barbara B. from her peers, induced an emotional dependence on Lee, and forced her to seek Lee's favor and approval, thus facilitating the sexual molestation. Referring to these specific "nonsexual" acts, plaintiff states: "Overall, by the demeaning nature of Gary Lee in public towards Barbara [B.], Gary Lee *forced Barbara [B.] to become further and further isolated from her peers and friends, and to turn to only him for emotional support.* Gary's *exercise of control* over Barbara included the allowing of her to eat in the band room alone, which meant she would not be teased or harassed by her peers. ¶ In addition, Gary Lee did not treat Barbara [B.] in public like a person, but as a thing. *This caused Barbara [B.] to seek Gary Lee's praise, approval or favor.*" (Italics added.)

It is difficult to conceive a purer example of psychological and physical manipulation designed to seduce an innocent minor. As defendant herself states, these other acts "isolated" her from her peers, forced her to "turn to [Lee] for emotional support," and "caused [her] to seek [Lee's] praise, approval or favor." Contrary to the conclusion of the majority, this is not "harassing conduct *separable* from the molestation" (maj. opn., *ante*, p. 1087, italics added), but rather a pattern of corrupt behavior targeting a victim for sexual exploitation. The record demonstrates that these ancillary acts which the majority repeatedly characterize as "*separable* from the molestation" in fact were inextricably linked to Lee's pedophilia. Relabeling such misconduct as "nonsexual" or "negligent" cannot alter its true nature and intent, nor withstand informed scrutiny.

Viewed in isolation, some of the alleged "nonsexual" acts might not appear to be intentional or part and parcel of the molestation. But the facts must be viewed in their entirety, not antiseptically separated and microscopically examined. Lee's attempts to isolate defendant and to make her emotionally dependent on his favor and approval, although not per se criminal, bore a direct causal relationship to the molestation. Under the circumstances,

these acts must themselves must be considered intentional, wrongful and inherently harmful.

In sum, the extrinsic evidence adduced by defendant conclusively eliminated any potential for coverage. Horace Mann reasonably determined that it had no duty to defend.

### 3. Case Law Supports a Finding of No Duty to Defend

Not surprisingly, the foregoing analysis is consistent with several recent decisions from other jurisdictions. In *Houg* v. *State Farm Fire and Cas. Co.* (Minn.App. 1992) 481 N.W.2d 393, a church pastor who was sued by a parishioner brought a declaratory relief action to determine his insurer's duty to defend. The complaint alleged that during the process of counseling, the pastor (Houg) "engaged in a course of conduct designed to entice and seduce" the parishioner, M.C., and that he ultimately coerced her into sexual relations. (*Id.* at p. 395.) While conceding that the policy did not apply to the sexual misconduct, Houg claimed that the allegations of emotional distress resulting from "negligent counseling" were potentially covered. Nevertheless, the court held there was no duty to defend, observing that "any alleged negligence in Houg's counseling centers on his entering into a sexual relationship with M.C. *Any negligent counseling is so intertwined with Houg's sexual exploitation of a psychologically dependent person as to be inseparable.*" (*Id.* at p. 397, italics added.)

As earlier discussed, Lee's "other" acts here were no less "intertwined" with the molestation. Like the pastor's negligent counseling, Lee's attempts to isolate Barbara B. and to induce an emotional dependence on his continued favor and approval were so inextricably linked with his "sexual exploitation of a psychologically dependent person as to be inseparable." (*Houg* v. *State Farm Fire and Cas. Co., supra*, 481 N.W.2d at p. 397.)

Another case closely on point is *Horace Mann Ins. Co.* v. *Leeber* (W. Va. 1988) 376 S.E.2d 581. There, the insurer filed a declaratory relief action to determine its duty to defend a teacher who had sexual relations with one of his students, Brian H., and pleaded guilty to two counts of sexual abuse. The complaint by the student's parents alleged that the teacher, Leeber, had "cultivated an abnormal relationship with some of his students, trying to become their friend, confidant and surrogate parent." (*Id.* at pp. 582-583.) They demanded damages for intentional and "negligent acts" in having sexual contacts with the student and "in seducing and enticing him into a relationship which caused emotional distress to Brian H. and his parents." (*Id.* at p. 583.) The court held that there was no duty to defend the claim of

intentional sexual misconduct *or* the alleged "negligent conduct, a sort of 'negligent' seduction into the nonphysical aspects of the relationship with Brian H. so as to cause emotional harm." (*Id.* at p. 587.) These alleged "nonphysical" acts which comprised the so-called "negligent seduction," the court held, were nothing more than a " '*transparent attempt* to trigger insurance coverage by characterizing allegations of [intentional] tortious conduct under the guise of negligent activity.' " (*Ibid.*, quoting *Linebaugh* v. *Berdish* (1985) 144 Mich.App. 750 [376 N.W.2d 400, 406], italics added.)

The instant case is essentially indistinguishable. The "nonsexual" acts alleged by defendant represent nothing if not a concerted seduction by every means at Lee's disposal. Defendant's effort to premise a duty to defend on the basis of these allegations is no less "transparent" than the similar attempt in *Leeber.* Like the court there, we should decline to be deluded into a result that flies in the face of common sense and undermines our own judicial philosophy.

It is beyond serious dispute that once the duty to defend attaches, the insurer often finds it necessary to fund all or part of a settlement regardless of its underlying duty to indemnify, because the costs of defense may far exceed the settlement offer. The duty to defend becomes, in effect, the duty to indemnify. Because almost every complaint based on child molestation can truthfully allege pre- or postmolestation acts designed to facilitate or cover up the sexual misconduct (see *John R.* v. *Oakland Unified School Dist., supra,* 48 Cal.3d 438; *Fire Ins. Exchange* v. *Abbott, supra,* 204 Cal.App.3d 1012), the net effect of the majority opinion is to nullify our holding in *J. C. Penney, supra,* 52 Cal.3d 1009, that the insurer owes no duty to pay for damages resulting from child molestation.

## CONCLUSION

The majority have created a fictional character that rivals any we have previously encountered, the bifurcated molester—a modern day Jekyll and Hyde whose sexual transgressions against a minor must be considered inherently harmful and noninsurable, but whose "harassing conduct" which assists the molestation is merely negligent and hence potentially insurable.

If the taking of this path represents an exercise of judicial leadership, I fear we have gone seriously astray. We have entered a valley of trees and have lost sight of the forest. But then a forest, like beauty, exists only in the eye of the beholder.

Respondent's petition for a rehearing was denied May 13, 1993, and the opinion was modified to read as printed above. Arabian, J., and Baxter, J., were of the opinion that the petition should be granted.