50 F.3d 13
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Peter C. BENNETT, Plaintiff-Appellant,
v.
The PHOENIX INSURANCE CO., Defendant-Appellee.
 No. 92-55420.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 2, 1993.
Decided March 6, 1995.
 
 Before: WALLACE, Chief Judge,* BRUNETTI and KOZINSKI, Circuit Judges.
 
 MEMORANDUM
 
 1
 In 1991, Bennett successfully defended a legal malpractice claim filed against him by Roberts. The claim arose from legal representation during 1971 through June 1976, when Bennett represented Roberts on some investment transactions, including the acquisition of a Los Angeles radio station. Subsequent to these events, Bennett obtained malpractice insurance with Phoenix Insurance Company (Phoenix) for a policy term of November 15, 1976, to March 3, 1977. Bennett argues that the Phoenix policy provided coverage, including the costs of Bennett's legal defense, for the Roberts lawsuit. Phoenix disagrees.
 
 
 2
 Bennett sued Phoenix in federal district court under diversity jurisdiction, 28 U.S.C. Sec. 1332, for breach of the insurance contract and fraud. The district court entered summary judgment for Phoenix, concluding that the acts alleged to have resulted in malpractice did not occur within the time period covered by the policy and, further, that any acts that did occur within the policy period were not acts done by Bennett in his capacity as a lawyer, as the policy requires. Bennett appeals to us pursuant to 28 U.S.C. Sec. 1291. We review the summary judgment de novo. See Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We affirm.
 
 
 3
 The Phoenix policy covers "any act or omission of the insured ... arising out of the performance of professional services for others in the insured's capacity as a lawyer...." Bennett argues that even though the initial alleged act of malpractice occurred in 1973, the claim against him was also for damages arising out of Bennett's continuing contact with Roberts regarding investments in the radio station, and Bennett's concealment of his own interests in the radio station, all of which jeopardized the good standing of Roberts in the eyes of the Federal Communications Commission.
 
 
 4
 Under California law, a "liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 1081 (1993), quoting Gray v. Zurich Ins. Co., 65 Cal.2d 263 (1966). "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." Id.
 
 
 5
 The terms of the Phoenix policy do not cover the alleged wrongful conduct of Bennett. While it is true that Roberts alleges ongoing and continuous acts of malpractice, all of these allegations stem from the initial act of malpractice that Bennett concedes is not covered by the policy. Bennett cannot successfully receive coverage from a policy, acquired after the initial claim of malpractice, by arguing that this initial act of malpractice somehow "continued" up and through the time of the lawsuit by Roberts.
 
 
 6
 Nor does the fact that Roberts alleges that these "continuing acts" by Bennett caused him damages separate from the initial alleged malpractice act by Bennett help in this case. Bennett relies on this fact to distinguish cases such as Chamberlin v. Smith, 72 Cal.App.3d 835 (1977). In Chamberlin, a claim by the plaintiff of "continuing negligence" on the part of the attorney for failure to rectify a faulty purchase agreement was not sufficient to establish malpractice coverage where the policy was not executed until after the purchase agreement. Id. at 841-42. The court concluded that a malpractice claim for damages, if any, was complete at the time the faulty purchase agreement was executed. Even if Chamberlin could be distinguished, and it cannot, on the ground that "Chamberlin's ... damage was irremediable as of the date the agreement of sale was executed," id. at 843, as Bennett suggests, the terms of the policy would still not cover Bennett. This is because any "continuing" acts on Bennett's part that occurred within the policy date were not made in his "capacity as a lawyer" for Roberts, as the policy requires. Bennett ceased acting as a lawyer for Roberts with respect to this transaction in June 1976, five months before the policy took effect.
 
 
 7
 Bennett further contends that the Roberts complaint contained allegations for damages that possibly could have arisen during the policy period: Bennett argues that Roberts, at his deposition, discussed how Bennett prevented Roberts from getting a commission owed Roberts by Frankie Valli. An examination of the complaint and facts extrinsic to the complaint do not support Bennett's argument. The complaint against Bennett does not mention Bennett's representation of Valli. The only mention of Valli is in a deposition where Roberts explains that Bennett's conduct with respect to the incident "didn't really bother [Roberts]." Furthermore, Roberts submitted a declaration affirming the fact that he "was not seeking damages and never intended to seek damages for any amount related to [Bennett's] role ... relating to ... Valli."
 
 
 8
 Bennett asserts that California law required Phoenix to defend him against Roberts because, even if the Valli incident was not part of the complaint, the possibility of damages arising from the incident was enough to trigger the policy protection. Bennett bears the burden of showing that Roberts potentially seeks damages within the coverage of the policy or that the facts already pled in the complaint may give rise to a new cause of action. See Olympic Club v. Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir.1993). However, Bennett does no more than speculate about an unpled claim in order to manufacture coverage. See Hurley Constr. Co. v. State Farm Fire & Cas. Co., 10 Cal.App.4th 533, 538 (1992). We will not "characterize the straightforward provisions of the policy to find coverage where none exists." Id. at 539.
 
 
 9
 AFFIRMED.
 
 
 10
 Note: This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.
 
 
 
 *
 By order of this court, Chief Judge Wallace has replaced Judge Boggs. Chief Judge Wallace has listened to the tape of oral argument, has reviewed the briefs and record in this case, and is familiar with the issues presented