Filed 5/5/23

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| POONAM DUA, | B314780 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC723434) |
| v. | |
| STILLWATER INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County. Gregory Keosian, Judge. Reversed and remanded with directions.

Law Offices of Marilyn M. Smith, Marilyn M. Smith; McCormick, Barstow, Sheppard, Wayte & Carruth and Gordon M. Park, for Plaintiff and Appellant.

Burton Kelley, Michelle L. Burton and Devin T. Shoecraft for Defendant and Respondent.

_____

In this insurance coverage action, the insurer contends that an animal liability exclusion in the insured's homeowner's insurance policy (the policy) precludes any duty to defend because the third party plaintiffs sued the insured for injuries they and their dogs sustained when their dogs were bitten by two pit bulls on a public street. The insurer reviewed the underlying complaint and determined that the exclusion applied because the underlying complaint alleged that the pit bulls lived at the insured's home, which was covered by an animal liability exclusion and therefore it had no obligation to indemnify an excluded claim. The insured denied any ownership or control of the pit bulls, which were owned by her boyfriend, who did not live at her home. The insurer did not conduct any further investigation.

Equating its obligation to indemnify with its duty to defend, the insurer denied the insured a defense because, if the exclusion applies, the insurer has no obligation to defend. The problem with the insurer's analysis is that the duty to defend is broader than the duty to indemnify, and the policy here specifically includes the defense of frivolous, groundless, false, or fraudulent claims that fall within the policy's coverage.

This was not a situation where there was no possibility of coverage for the third party's claims at the time the insurer denied coverage. Even if the insured was correct and the pit bulls were not under her ownership, did not live in her home, and were not under her control when the attack occurred—the third party still might have raised a claim potentially covered by the policy. An insurer can be excused from the duty to defend only if the third party complaint can by no conceivable theory raise an issue within the policy's coverage. Yet the insured was alleged to

2

know the dogs were dangerous and the insurer knew that the dogs were being walked by the insured's boyfriend near her home.  There may have been a possible claim that came within coverage.  That, as currently pleaded, the third party lawsuit was frivolous and baseless does not mean there was no possibility of coverage and thus no duty to defend.  The insurer did nothing to investigate and concluded there was no possible coverage based only on the animal liability exclusion.  The insured was entitled to a defense and was forced to settle to minimize her exposure because of the insurer's decision to focus on the policy exclusion rather than the insured's exposure to a frivolous lawsuit that could fall within the policy coverage.  As discussed below, our conclusion is consistent with the holding of our Supreme Court's decision in *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076 (*Horace Mann*).

Plaintiff and appellant Poonam Dua (Dua) appeals from the summary judgment entered in favor of defendant and respondent Stillwater Insurance Company (Stillwater).  Dua argues that the trial court erred in granting summary judgment in favor of Stillwater on her claims based on Stillwater's refusal to defend Dua in the third party lawsuit.  We conclude that the trial court erred in granting summary judgment to Stillwater because there is evidence that Stillwater breached its duty to defend.  We also reverse the trial court's grant of summary judgment in favor of Stillwater on Dua's claim for breach of the duty of good faith and fair dealing.  We decline to address the issue of punitive damages for the first time on appeal and remand that issue to the trial court.  We reverse and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    Facts**

The following facts are undisputed.

**A.    Insurance Policy**

Dua was the named insured on a homeowner's insurance policy issued by Stillwater that provided her with personal liability coverage.  The policy provided coverage if a "claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damages' caused by an 'occurrence' to which this coverage applies."  The personal liability provision stated that Stillwater would pay up to its limit of liability for damages for which the insured is legally liable, and will "[p]rovide a defense at our expense . . . even if the suit is groundless, false or fraudulent."

The policy made three references to an "animal liability exclusion."  First, the policy contained a separate page entitled "Animal Liability Exclusion" (Exclusion 1),[1] which states:  "This insurance does not apply to any occurrence or damages caused by any animal, at any time, at any premises insured hereunder, or caused by, arising out of, or in any way related to any animal owned by or in the care, custody, or control of the insured, or any member of the insured's family or household.  [¶]  Animal liability coverage is provided if a specific premium is charged and shown on the Declaration page for this coverage. . . ."  On the bottom left of this page is written:  "ANIMAL EXCL 05 14."

---

[1] The parties refer to the policy's three references to an animal liability exclusion as Exclusions 1, 2, and 3, so we refer to each by the same names for clarity purposes.

4

Second, the policy contains another page that adds the following exclusion to "SECTION II – EXCLUSIONS, E. Coverage E – Personal Liability And Coverage F – Medical Payments to Others" of the policy as a new "Paragraph 9," providing: "9. 'Bodily Injury' or 'Property Damage' caused by an occurrence or damage by any animal at any time on any premises insured hereunder. This exclusion applies to damages caused by, arising out of, or in any way related to any animal owned by or in the care, custody, or control of the insured, or any member of the insured's family or household. [¶] Coverage may be provided if a specific premium has been charged and shown on the Declaration Page for this coverage. . . . [¶] All other terms and conditions of this policy are unchanged. . . ." (Exclusion 2.)

Relevant to Exclusions 1 and 2, there is no indication of an animal liability premium on the "Declaration" page, and it is undisputed that Dua did not purchase such coverage.

A third exclusion (Exclusion 3) restates Exclusion 1, except that it is expressly conditioned on the printing of a state-specific endorsement form number on the policy. Exclusion 3 is contained on a document titled, "HOMEOWNERS 6 – UNIT OWNERS FORM[,] POLICY ENDORSEMENTS." The document begins by stating, "IMPORTANT NOTICE [¶]–ANIMAL LIABILITY EXCLUSION–[¶]" and then provides: "This endorsement and its policy conditions only apply if the appliable state endorsement form number below is listed in the back of your policy declarations." The number that follows for California is "Animal Excl 04 11." This number is not on the back of the policy's "Declarations" page. Only animal exclusion "05 14" is listed in the Declarations page under the title of "Amendment Provision," which is the number printed on Exclusion 1.

5

### B. Third Party Lawsuit Against Dua

Husband and wife Simeon and Roslyn Peroff filed suit against Dua and Eric Taylor (Taylor) for personal injuries and property damages caused by Taylor's dogs. In their complaint, the Peroffs alleged that while they were walking their two dogs on a street in Calabasas, California, Taylor was also walking his dogs, and Taylor's dogs attacked the Peroffs' dogs. The Peroffs alleged that as they walked by Taylor, they saw two pit bull dogs standing by him on retractable leashes. They alleged that the dogs were "let loose by Taylor," and Taylor's dogs attacked the Peroffs' dogs. Both of the Peroffs' dogs were physically injured. The complaint alleged that this experience also caused mental and emotional distress to the Peroffs as witnesses of the attack.

Dua was not alleged to be present when the dog attack occurred, nor did the complaint allege she was an owner of Taylor's dogs. Taylor is alleged as the owner and the only person walking the dogs when the attack occurred. It is undisputed that the attack did not occur on Dua's property, but rather on a public street.

As to Dua, the Peroffs' complaint alleged that Taylor and his dogs lived at Dua's home, that Dua knew the "TAYLOR PIT BULLS" were dangerous and their attack was reasonably foreseeable to her but she did not prevent it, and that Dua was therefore liable because she was "the owner of the property and/or related [*sic*] that housed or w[as] otherwise aware of the TAYLOR PIT BULLS," and had a "duty of care" to take measures to prevent the attack and did not do so.[2]

---

[2] In Dua's complaint against Stillwater, Dua denied that Taylor lived with her at the insured property. She said that Taylor was her boyfriend who lived out of state but was visiting

6

## II.    Procedural Background

Sometime around September 2016, Dua notified Stillwater of the Peroffs' lawsuit and sought defense of the suit under the policy.  Dua reported to Stillwater that her boyfriend, Taylor, had been walking his dogs when they attacked the Peroffs' dogs, and that Taylor was the owner of the dogs.

Stillwater employee Tracy Hull (Hull) reviewed the Peroffs' complaint and the information provided by Dua, and determined that there was no coverage for the Peroffs' lawsuit based on "the Animal Liability Exclusion endorsement."  In the denial letter, Hull quoted Exclusion 2.  In her deposition, Hull testified that this was a mistake and that she meant to quote Exclusion 1.  The denial letter further provided that it is "not meant to detail every basis upon which coverage might be declined.  Stillwater specifically reserves its right to decline coverage on any basis which may exist under these circumstances.  Nothing in this correspondence should be construed as a waiver of any terms, conditions, exclusions, and rights under the policy."

Dua settled the Peroffs' lawsuit.  The settlement agreement stated that the parties acknowledged that "TAYLOR was the owner of the two dogs that were involved in the September 18, 2015 incident which gave rise to the lawsuit."

Dua filed suit against Stillwater in September 2018.  She alleged claims for breach of contract and for breach of the covenant of good faith and fair dealing.  The basis for these claims were allegations that Stillwater failed to conduct an adequate investigation into the claims against Dua in the Peroffs'

---

his relatives in the Los Angeles area at the time of the dog attack.

7

lawsuit and Stillwater's failure to defend Dua in the action and pay for her settlement because it "unreasonably and narrowly" interpreted the policy. Dua asserted that had Stillwater conducted a reasonable investigation of the Peroffs' claims, it would have discovered the following facts: (1) she was not married to Taylor; (2) Taylor did not live with her nor was he staying with her at the time of the dog attack; (3) the attack did not occur on her premises; and (4) at the time of the dog attack, the dogs were leashed and under the care, custody, and control of Taylor.

Stillwater moved for summary judgment. Stillwater argued that Dua's first cause of action for breach of contract had no merit because Stillwater had no duty to defend or indemnify Dua against the Peroffs' suit, citing Exclusion 1. Stillwater argued that Dua's second cause of action for breach of the implied covenant of good faith and fair dealing had no merit because Stillwater did not wrongfully deny coverage, and its refusal to defend or indemnify was reasonable as a matter of law. Finally, Stillwater asserted that Dua's prayer for punitive damages had no merit because there was no evidence that Stillwater engaged in any malicious, oppressive, or fraudulent conduct that would support damages under Civil Code section 3294.

In opposition, Dua argued that for an insurer to decline to defend against a third party lawsuit based on a coverage exclusion, the insurer needs to "prove" the facts in the case that would trigger the exclusion. Dua also argued that the Peroffs' could have amended their complaint to allege a covered claim, and that the policy was ambiguous.

The trial court granted Stillwater's motion for summary judgment. The court concluded that because Dua's liability for

the Peroffs' lawsuit could be established only on facts that would trigger Exclusion 1, which would negate coverage, there was no duty to defend because there was "no possibility that [Dua] could be found liable on facts that would have required [Stillwater] to indemnify her." The court considered Exclusions 1, 2, and 3 and the policy as a whole and found no ambiguity. Because it granted Stillwater's motion on the breach of contract cause of action, the trial court also granted the motion on the remaining cause of action for breach of the implied covenant of good faith and fair dealing. It thus granted Stillwater's motion for summary judgment in its entirety.

This appeal by Dua followed.

## DISCUSSION

### I.    Standard of Review

Summary judgment is appropriate if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) " ' " ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' " (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th

826, 853.)  If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.)

## II.    Relevant Insurance Law Principles

Interpretation of an insurance policy is a question of law that follows the general rules of contract interpretation.  (*TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27.)  If the language of a policy is clear and explicit, then it governs.  (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868.)  "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable."  (*Ibid.*)  Provisions must be interpreted in context, giving effect to every part of the policy with " 'each clause helping to interpret the other.' " (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115.)

The insured has the initial burden of showing that a claim falls within the scope of coverage, and a court will not " 'indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage.' " (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 16 (*Waller*).)  But the burden is on the insurer to show the claim falls within an exclusion to coverage, and exclusions are narrowly construed.  (*Ibid*.)  An exclusionary clause must be " 'conspicuous, plain and clear.' " (*De May v. Interinsurance Exchange* (1995) 32 Cal.App.4th 1133, 1137, quoting *Steven v. Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 878, italics omitted.)

## III.    Breach of Contract

"[T]he duty to defend is contractual."  (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 47.)  "[A] liability insurer owes a

10

broad duty to defend its insured against claims that create a potential for indemnity." (*Horace Mann*, *supra*, 4 Cal.4th at p. 1081.) A " 'carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.' " (*Ibid.*, quoting *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 (*Gray*).) "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." (*Horace Mann*, at p. 1081.) The duty to defend applies to claims that are groundless, false, or fraudulent. (*Waller*, *supra*, 11 Cal.4th at p. 19, citing *Gray*, *supra*, at p. 267.) "However, ' "where there is no possibility of coverage, there is no duty to defend." ' " (*Waller*, at p. 19, quoting *Fire Ins. Exchange v. Abbott* (1988) 204 Cal.App.3d 1012, 1029.)

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." (*Horace Mann*, *supra*, 4 Cal.4th at p. 1081; see also *Waller*, *supra*, 11 Cal.4th at p. 19.) "Conversely, where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability. [Citations.] This is because the duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." (*Waller*, at p. 19.) The duty to defend arises under the facts alleged, and any doubts are resolved in favor of the insured. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 287 (*Hartford Casualty*).)

11

Here, the policy's personal liability provision applied to a claim or suit brought against the insured for damages because of 'bodily injury' or 'property damages' caused by an 'occurrence' to which this coverage applies," and stated that Stillwater would "[p]rovide a defense at our expense . . . even if the suit is groundless, false or fraudulent."

When Dua sought Stillwater's defense against the Peroffs' lawsuit, she informed Stillwater that she did not own the dogs and that the dogs were in the care, custody, and control of her boyfriend when the dog attack occurred because Taylor was walking the dogs. Stillwater responded with a letter stating there was no coverage, citing Exclusion 2. Stillwater ignored the facts provided by Dua suggesting that the policy's animal exclusions did not apply because she did not own the dogs, nor were they in her care, custody, or control. The duty to defend exists where extrinsic facts, both disputed and undisputed, that the insurer knows or becomes aware of from any source at the time of the inception of the third party lawsuit or at the time of tender, suggest there may be coverage. (*Hartford Casualty*, *supra*, 59 Cal.4th at p. 287.) "Thus, '[i]f any facts . . . known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage.' " (*Ibid.*) There is no evidence that Stillwater took any measures to investigate or otherwise negate the facts suggesting that an animal liability exclusion may not apply and there was potential coverage, and therefore it had a duty to defend Dua.

Stillwater argues that the trial court was correct in finding it had no duty to defend as a matter of law. It argues that if Dua

12

lacked ownership, care, custody, or control of the dogs, then there is no possibility that Dua could be held liable under the Peroffs' complaint. It also argues that if Dua did have ownership, care, custody, or control of the dogs, then there would be no coverage under the policy because Exclusion 1 would apply. Following this reasoning, which was the reasoning of the trial court, Stillwater argues there was no possibility of coverage under the policy.

We disagree. Stillwater conflates the possibility of Dua's liability with Stillwater's duty to defend. Even if Dua cannot be found legally liable under the Peroffs' complaint as pleaded, and is therefore not entitled to indemnity coverage under the policy, Stillwater may still be required to defend her. The Peroffs' claims, when evaluated in light of the facts presented by Dua to Stillwater when she tendered the claim, may have been frivolous and unmeritorious, but did not come within the animal liability exclusion. They thus created at least a possibility of coverage and the duty to defend. (*Horace Mann*, *supra*, 4 Cal.4th at p. 1086 ["An insured buys liability insurance in large part to secure a defense against *all* claims potentially within policy coverage, even frivolous claims unjustly brought"].) The duty to defend is broader than the duty to indemnify. (*Horace Mann*, at p. 1081; *Gray*, *supra*, 65 Cal.2d at p. 278.) An insurer can be excused from the duty to defend "only when ' "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." ' " (*Hartford Casualty*, *supra*, 59 Cal.4th at p. 288.) Stillwater has not established that there was no conceivable theory to bring the third party complaint within the possibility of coverage, and the facts Dua provided to Stillwater suggested that there may be coverage.

13

In sum, Stillwater failed to meet its burden of establishing it was entitled to summary judgment on Dua's breach of contract claim, and the trial court erred in granting it summary judgment.

## IV. Breach of the Covenant of Good Faith and Fair Dealing

The trial court granted summary judgment in favor of Stillwater on Dua's second cause of action for good faith and fair dealing because it concluded that Stillwater had not breached its contract with Dua. Bad faith actions require a determination that the insurer breached its obligations under the contract. (See *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1986) 184 Cal.App.3d 1428, 1434 [before proceeding to adjudicate insured's bad faith claim, it must first be established that insurer breached its obligations under insurance contract]; *Kopczynski v. Prudential Ins. Co.* (1985) 164 Cal.App.3d 846, 849.) For the reasons above, we conclude that the trial court erred in holding that Stillwater had not breached the parties' contract.

A mere breach of contract, however, is insufficient to determine bad faith. To prevail at trial, the insured must also show that insurer withheld that benefit unreasonably or without proper cause. (See, e.g., *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574; *Congleton v. National Union Fire Ins. Co.* (1987) 189 Cal.App.3d 51, 58.) Stillwater argues that Dua cannot make this showing because its denial of coverage based on the animal liability exclusion was reasonable. Dua has introduced facts giving rise to a material dispute of fact as to whether Stillwater unreasonably or improperly failed to defend when it was presented with facts suggesting that the animal liability exclusions did not apply. (See *Wilson v. 21st Century Ins. Co.*

14

(2007) 42 Cal.4th 713, 721, 724 [stating that an "insurer is not entitled to judgment as a matter of law where . . . a jury could conclude that the insurer acted unreasonably" and "[a] trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence"].)

We conclude that summary judgment in favor of Stillwater was improper as to Dua's second cause of action for breach of the duty of good faith and fair dealing. On remand, the trial court should enter an order denying Stillwater's motion for summary judgment on Dua's second cause of action for good faith and fair dealing.

## V. Punitive Damages

Stillwater also moved for summary judgment on Dua's claim for punitive damages, arguing there is no clear and convincing evidence that Stillwater engaged in any malicious, oppressive, or fraudulent conduct to support an award under Civil Code section 3294. (See *PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 319.)

The trial court did not address punitive damages in its order granting summary judgment to Stillwater. On appeal, Dua argues that we should not address the issue of punitive damages because the trial court did not address it. We agree with Dua and decline to address the issue for the first time on appeal. An appellate court may decline to resolve in the first instance issues that a trial court's initial erroneous ruling made it unnecessary for the trial court to address. (*Ruegg & Ellsworth v. City of Berkeley* (2023) 89 Cal.App.5th 258, 268.)

We remand to the trial court for consideration of Stillwater's motion for summary judgment on the issue of punitive damages.

**DISPOSITION**

The summary judgment order in favor of Stillwater is reversed. The cause is remanded and the trial court is directed to enter a new order denying Stillwater's motion for summary judgment on Dua's claims for breach of contract and breach of the duty of good faith and fair dealing. On remand, the court shall consider Stillwater's motion for summary judgment on punitive damages. Dua is entitled to costs on appeal.

CERTIFIED FOR PUBLICATION.

LUI, P. J.

I concur:

CHAVEZ, J.

*Dua v. Stillwater Insurance Company*, B314780
ASHMANN-GERST, J., Concurring in the judgment.


I agree with the majority that the trial court erred in granting defendant and respondent Stillwater Insurance Company's (Stillwater) motion for summary judgment. I write separately because I reach that conclusion through a different analysis.

I. *Factual and Procedural Background*

The undisputed facts are set forth in the majority opinion. Plaintiff and appellant Poonam Dua (Dua) was insured by Stillwater. The policy provided coverage if a "claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damages' caused by an 'occurrence' to which this coverage applies." "'Occurrence'" is defined as an accident that results in bodily injury or property damage. As set forth in the personal liability provision, Stillwater agreed to "[p]rovide a defense at [its] expense . . . even if [a third party] suit is groundless, false or fraudulent." The policy also contains an animal liability exclusion,[1] excluding coverage for damages caused by "any animal owned by or in the care, custody, or control of" Dua.

Simeon and Roslyn Peroff (the Peroffs) filed a lawsuit against Dua and Eric Taylor (Taylor) for personal injuries and property damages caused by Taylor's dogs on a public street. As to Dua, the Peroffs' complaint alleges that Dua knew that

---

[1] The majority opinion explains in detail the policy's reference to three animal liability exclusions. (Maj. Opn., at pp. 4–5.) To avoid repetition, I do not set forth the terms of each exclusion here.

Taylor's dogs were dangerous and their attack was reasonably foreseeable to her but she did not prevent it.  The complaint further alleges that Dua is liable to the Peroffs because she had a "duty of care" to take measures to prevent the dog attack and did not do so.

Dua notified Stillwater of the Peroffs' lawsuit and sought defense of it under the terms of her insurance policy.  Stillwater denied Dua's claim pursuant to the animal liability exclusion.

Dua eventually settled with the Peroffs, and then filed the instant action for breach of contract and breach of the covenant of good faith and fair dealing against Stillwater.  As is relevant here, Dua alleges that Stillwater breached its duty to defend her.

Stillwater moved for summary judgment, or, in the alternative, summary adjudication of each cause of action and Dua's prayer for punitive damages.  The trial court granted Stillwater's motion for summary judgment.  In so doing, it did not reach Stillwater's request for summary adjudication of Dua's demand for punitive damages.

II. *Analysis*

A. <u>Relevant law</u>

"The principles governing determination of an insurer's duty to defend are well established, and were reiterated in *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081: '[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity.  [Citation.]  As we said in [*Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 275 (*Gray*)], "the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy."  [Citation.]  Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend

its insured in an action in which no damages ultimately are awarded. [Citations.] [¶] The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy.'" (*Westoil Terminals Co., Inc. v. Industrial Indemnity Co.* (2003) 110 Cal.App.4th 139, 152–153 (*Westoil*).)

"The insurer must defend any claim that would be covered if it were true, even if in fact it is groundless, false, or fraudulent. [Citation.]" (*North American Building Maintenance, Inc. v. Fireman's Fund Ins. Co.* (2006) 137 Cal.App.4th 627, 637.) "'Under such a clause it is the duty of the insurer to defend the insured when sued in any action where the facts alleged in the complaint support a recovery for an "occurrence" covered by the policy, regardless of the fact that the insurer has knowledge that the injury is not in fact covered. [Citations.]' [Citation.]" (*Borg v. Transamerica Ins. Co.* (1996) 47 Cal.App.4th 448, 455; see also *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 298 (*Montrose*) ["the insurer may not decline to defend a suit merely because it is devoid of merit, but instead must assert appropriate defenses on the insured's behalf in the underlying action"].)

"However, 'the obligation to defend is not without limits. [Citation.] Rather, such a duty is limited by "the nature and kind of *risk covered by the policy*." [Citation.] For example, "the insured could not reasonably expect protection under an automobile insurance policy for injury which occurs from defect in a stairway." [Citations.] [¶] . . . [¶] Alternatively in *Gray*, we held that there was also a duty to defend whenever the underlying action potentially sought damages covered by the indemnity provisions of the policy. [Citations.] . . . [¶] We

3

recognized, however, that "the insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." [Citations.]' [Citation.] In other words, if 'there is no potential for coverage, the insurer may refuse to defend the lawsuit.' [Citation.]" (*Westoil*, *supra*, 110 Cal.App.4th at p. 153; see also *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 287 ["An insurer owes a broad duty to defend against claims that create a potential for indemnity under the insurance policy"].)

Generally speaking, "doubt as to whether an insurer owes a duty to defend 'must be resolved in favor of the insured.' [Citation.]" (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc., supra,* 59 Cal.4th at p. 287.)

B. <u>Analysis</u>

Applying these legal principles, the trial court erred in granting Stillwater's motion for summary judgment. There was a potential for indemnity under the theory alleged by the Peroffs against Dua because their claims for bodily injury and/or property damage arose out of an "'[o]ccurrence'"; thus, Stillwater owed Dua a duty to defend her against the Peroffs' claims.

The Peroffs alleged that Dua knew that Taylor's dogs were dangerous and did nothing to prevent their attack. While this potential theory of liability may be a stretch under the current state of the law,[2] that is not to say that there was *no* potential for indemnity.

---

[2] "California courts have explicitly rejected the concept of universal duty." (*The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1527.)

4

"In general, courts have imposed a duty to prevent the harm caused by a third party's animal when a defendant possesses the means to control the animal or the relevant property and can take steps to prevent the harm." (*Cody F. v. Falletti* (2001) 92 Cal.App.4th 1232, 1236; see also *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1369; *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, 1838.) "'*When it becomes clear that the plaintiff's interests are entitled to legal protection against the conduct of the defendant*, the mere fact that the claim is novel will not itself operate as a bar to the remedy.'" (*Smith v. Superior Court* (1984) 151 Cal.App.3d 491, 496, overruled on other grounds in *Cedars-Sinai Medical Center. v. Superior Court* (1998) 18 Cal.4th 1, 18.) Applying the logic and reasoning of these cases, there is the possibility that a court could have found Dua liable to the Peroffs under a novel theory premised upon Dua's alleged duty to take steps to prevent foreseeable injury and damage, such as by instructing her invited guests not to bring vicious animals to her home because it was reasonably foreseeable that the guests would walk the animals and that the animals would attack. This sort of claim would have fallen within the scope of the nature and kind of risk covered by Dua's policy.[3] (See, e.g., *Westoil, supra,* 110 Cal.App.4th at p. 153; *Montrose, supra,* 6 Cal.4th at p. 298 ["the insurer may terminate its defense obligation by proving

---

[3] And, such a claim would not implicate the animal liability exclusion because it does not arise out of Dua's ownership, custody, control, or care of Taylor's dogs. (*Westoil, supra,* 110 Cal.App.4th at p. 146 [exclusions in insurance policies are strictly construed].) Rather, it would arise out of Dua's alleged ability to somehow control her invited guests.

that the underlying claim falls outside the scope of policy coverage, but not by demonstrating that the claim lacks merit, or might have merit only on some theory outside the scope of coverage"].)

I acknowledge that under the current state of the law this seems to be a groundless claim.  But, as my colleagues recognize, pursuant to the terms of the insurance policy and well-established insurance law, Stillwater was obligated to defend Dua against groundless claims.  In other words, while the Peroffs' claim against Dua may have been baseless, that did not excuse Stillwater's duty to defend her.  (See *Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 314, fn. 2 [an insured could reasonably expect a defense when the policy indicates that the insurer would defend against groundless claims].)  Instead, Stillwater should have undertaken the defense and asserted appropriate defenses on Dua's behalf.  (*Montrose, supra*, 6 Cal.4th at p. 298.)

It follows that Stillwater did not negate all facts suggesting potential coverage.  As such, it was not entitled to summary judgment or summary adjudication of either the claim for breach of contract or breach of the implied covenant of good faith and fair dealing.  (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc., supra*, 59 Cal.4th at p. 287.)

In light of this determination, I agree with the majority that the matter should be remanded to the trial court for consideration of Stillwater's motion for summary adjudication of the issue of punitive damages.  (*Planet Bingo, LLC v. Burlington Ins. Co.* (2021) 62 Cal.App.5th 44, 58.)

_____, J.
ASHMANN-GERST

7